1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

NOTICE OF REMOVAL

Electronically FILED by Superior Court of California, County of Riverside on 12/08/2023 03:43 PM
Case Number CVRI2306599 0000077992448 - Jason B. Galkin, Executive Officer/Clerk of the Court By Kenneth Thomsen, Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation;
ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation;

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Riverside Healthcare System, L.P. dba Riverside Community Hospital

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Riverside Superior Court<br><br>4050 Main Street, Riverside, CA 92501 | **CASE NUMBER:**<br>*(Número del Caso):* **CVRI2306599** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Amy O'Neill, 621 Capitol Mall, Suite 1500, Sacramento, CA 95814 - (916) 321-4812

| DATE:<br>*(Fecha)* | 12/8/23 | Clerk, by<br>*(Secretario)* | _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario  Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

GC68150(g)

**SUM-200(A)**

| SHORT TITLE:<br>Riverside Healthcare System, L.P. v Apex Management Group I | CASE NUMBER:<br>CVRI2306599 |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive.

Page ___2___ of ___2___

**Page 1 of 1**

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form   Save this form   Clear this form

Electronically FILED by Superior Court of California, County of Riverside on 12/08/2023 09:51 AM
Case Number CVRI2306599 0000077921703 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

GLENN E. SOLOMON (SBN 155674)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:     (213) 443-4355
Facsimile:      (213) 443-4310
Email:           *gsolomon@kslaw.com*

AMY L. O'NEILL (SBN 294458)
ELIZABETH K. KEY (SBN 323544)
**KING & SPALDING LLP**
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone:     (916) 321-4800
Facsimile:      (916) 321-4900
Email:           *aoneill@kslaw.com*
                    *ekey@kslaw.com*

Attorneys for Plaintiff Riverside Community Hospital

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  CVRI2306599<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF WRITTEN CONTRACT**<br>2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3. **INTENTIONAL MISREPRESENTATION/OMISSION**<br>4. **NEGLIGENT MISREPRESENTATION/OMISSION**<br>5. **INTENTIONAL INTERFERENCE WITH CONTRACT**<br>6. **NEGLIGENT INTERFERENCE WITH CONTRACT**<br>7. **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Riverside Healthcare System, L.P., dba Riverside Community Hospital ("Riverside") alleges as follows:

1. This lawsuit arises from Defendants' failure to properly pay Riverside for the medical care provided to a motorcyclist critically injured by a high speed rear-end collision ("Patient").[1] The bill for Patient's near one-month stay totaled $1,995,262.00.

2. MultiPlan Inc., and Analytic Alternative, LLC dba Apex Management Group entered into a written one-time single case agreement with Riverside ("Single Case Agreement"), in which Riverside agreed to accept from these Defendants a fraction of the total bill, or $987,366.00 – i.e., 50% off for this one case.

3. Notwithstanding this explicit written agreement, Defendants instead paid Riverside just $2,500 **– a mere 0.25% of the agreed amount**. They did so on the purported basis that Patient's insurance only covers inpatient and outpatient hospital services up to a maximum of $2,500 per calendar year (the **"$2,500 Annual Coverage Limit"**).

4. Defendants' payment of $2,500 instead of $987,366.00, as agreed, is a blatant breach of a binding and enforceable written contract.

5. Defendants also are engaged in a calculated scheme to circumvent federal law, which strictly outlaws annual limits on certain services defined as Essential Health Benefits ("EHBs") which includes "Emergency" and "Hospitalization" services. Yet, Defendants purport to have an annual cap for these EHBs at $2,500.

6. Since 2019, Riverside has diligently and repeatedly sought reimbursement of the outstanding amounts owed by Defendants, but Defendants have refused to pay a cent more.

7. Defendants' arbitrary and capricious failure to correct their significant underpayment in contravention of the clear terms of the Single Case Agreement, and the law, leaves Riverside no choice but to file this lawsuit to seek recovery of the amounts owed.

---

[1] Riverside has omitted Patient's identity to protect privacy. Riverside engaged in pre-filing communications with Defendants about the Patient and is informed and believes this Complaint's allegations sufficiently identify Patient for Defendants. Riverside will provide confirming identifying information to Defendants and the Court outside the context of a public filing and/or pursuant to a Court order and protective order if needed.

**THE PARTIES**

8.      Plaintiff Riverside is a highly respected 517-bed acute care facility in Riverside, California. It operates a 24-hour Emergency Department ("ED") and is the largest Level I Trauma center in the Inland Empire. As a Level I Trauma center, Riverside serves as a tertiary care facility capable of providing care to even the most severely injured patients. Additionally, Riverside is a STEMI (acute heart attack) Receiving Center, an Accredited Chest Pain Center, and a Comprehensive Stroke Center. Riverside provides emergency and hospitalization services to patients who present to the ED, including the Patient here.

9.      On information and belief, Defendant Apex Management Group I, Inc. is a for-profit Illinois corporation with headquarters in Western Springs, Illinois.

10.      On information and belief, Defendant Analytic Alternative, LLC ("Analytic Alternative") is a for-profit Illinois limited liability corporation with headquarters in Willowbrook, Illinois. On information and belief, Analytic Alternatives was involuntarily dissolved in August 2018 but appears to now be operating as Apex Management Group I, Inc.

11.      On information and belief, Apex Management Group I., Inc. and/or Analytic Alternative, LLC do business as Apex Management Group, and are collectively referred to herein as "Apex Management Group."

12.      On information and belief, Defendant MultiPlan Inc. ("MultiPlan") is a for-profit Delaware corporation with headquarters in New York, New York. On information and belief, MultiPlan is a health network provider that arranges, manages, and offers national preferred provider organization ("PPO") plans. MultiPlan maintains offices in Lake Forest, California and operates and does business all throughout the state of California.

13.      On information and belief, Defendant Regional Care, Inc. ("RCI") is a Third-Party Administrator ("TPA") of healthcare benefits who acts on behalf of employers to administer health care benefits. Riverside is informed and believes that RCI is headquartered in Scottsbluff, Nebraska and operates and does business all throughout the state of California. Riverside is informed and believes that RCI acted as the TPA of the health benefit plan at issue here.

14.      The way Defendants have conducted themselves when communicating to Riverside about

3

Patient, the bill for Patient's care, and the Single Case Agreement, has made it difficult, if not impossible, to determine which of them is liable. It has also made it difficult, if not impossible, to determine which of them has authority to speak on behalf of Patient's health benefit plan and/or for each other, as well as the nature of the relationship between them, whether agents, independent contractors, or some other status.

15.     Riverside is unaware of the true names and capacities of defendants sued as Does 1 through 10. Riverside alleges that each of these fictitiously named defendants are responsible and liable in some manner for the acts and omissions described in this complaint. Riverside will seek leave of court to amend this complaint to assert the identities and capacities of the defendants named as Does 1 through 10 when such identities and capacities have been ascertained.

16.     At all relevant times, each defendant acted in concert with one or more of the other defendants, and intended and did knowingly participate in the events, acts, transactions, practices, and courses of conduct described in this complaint.

17.     At all relevant times, in committing the acts and omissions described in this complaint, each defendant caused, aided, abetted, facilitated, encouraged, authorized, permitted, and/or ratified the wrongful acts and omissions of the other defendants.

## VENUE AND JURISDICTION

18.     The actions described herein occurred, were accomplished, and/or had their purposeful effect in Riverside, California. Accordingly, this Court has jurisdiction over such matters pursuant to Code of Civil Procedure section 410.10 and Section 10 of Article VI of the California Constitution.

19.     Venue is proper pursuant to Code of Civil Procedure section 395.

## THE RIVERSIDE/MULTIPLAN CONTRACT

20.     MultiPlan and Riverside have a written Participating Facility Agreement, effective January 1, 2012, with rate amendments occurring in 2017 and 2018. The Participating Facility Agreement remains in effect to the present.

21.     Through this Participating Facility Agreement, Riverside agreed to participate in MultiPlan's Provider Network and accept payment for services at discounted rates off Riverside's otherwise applicable billed charges, in exchange for, among other things, the assurance that MultiPlan

would ensure timely compensation to Riverside in accordance with the terms of the Participating Facility Agreement for services rendered to members of the plans that access MultiPlan's network.

22.     Section 4.3 of the Participating Facility Agreement, entitled "Client Agreements," states that "[MultiPlan] agrees that it has entered into written agreements with Clients for the use of the Network. Each agreement between [MultiPlan] and a Client will obligate the Client to comply with the terms of this Agreement, including but not limited to the obligation to pay, or require User to pay, for Covered Services rendered to Participants in accordance with the provisions of Article V of this Agreement."

23.     Section 5.2 of the Participating Facility Agreement, entitled "Payment for Covered Services," states that "Client will, within thirty (30) business days of receipt of a Clean Claim, pay or require User to pay Facility for Covered Services, as full compensation, the Contract Rate in accordance with the terms of this Agreement … in order to obtain the benefit of the Contract Rate."

24.     The term "Client" is defined in Section 1.6 of the Participating Facility Agreement as, "an insurance company, employer health plan, Taft-Hartley Fund, or other organization that sponsors, or administers on behalf of a User, as applicable, one or more Programs and is required to pay, or requires User to pay, for the provisions of Covered Services to Participants accessing the Network."

25.     The term "User" is defined at Section 1.21 of the Participating Facility Agreement and "means any corporation, partnership, labor union, association, program, employer or any other entity responsible for the payment of Covered Services. Client may also be a User." Apex Management Group and RCI are considered "Clients" and/or "Users" under the Participating Facility Agreement.

26.     Section 1.10 of the Participating Facility Agreement defines "Covered Services" as "health care treatment and supplies, including but not limited to Emergency Services, rendered by a Network Provider and provided to a Participant for which a User is responsible for payment pursuant to the terms of a Program and/or applicable state and federal law."

27.     Section 4.1 of the Participating Facility Agreement, entitled "Limitations," provides that, "[MultiPlan's] duties are limited to those specifically set forth herein. [MultiPlan] does not determine benefits eligibility or availability for Participants and does not exercise any discretion or control as to Program assets, with respect to policy, payment interpretation, practices, or procedures. [MultiPlan] is

not the administrator insurer underwriter, or guarantor of Programs, and MPI is not liable for the payment of services under Programs."

28.     Section 4.8 of the Participating Facility Agreement, entitled "Administrative Duties," provides, "Subject to the limitations specified in Section 4.1 of this Agreement, [MultiPlan] shall perform all administrative duties in compliance with its obligations and responsibilities as set forth in this Agreement, and shall use commercially reasonable efforts to promptly respond to [Riverside's] requests for information (e.g., provider directories, Benefit Program designs claims information, utilization data etc…). In order to assist [Riverside] in its efforts to comply with, and corroborate [MultiPlan's] Clients' and Users' performance of, their respective obligations hereunder."

29.     Section 4.13 of the Participating Facility Agreement provides, "[<u>MultiPlan] as Liaison</u>. In the event of a dispute between [Riverside] and Client, or any authorized agent acting on behalf of Client relating to compliance with the term of this Agreement, [MultiPlan] will act as a liaison and work in cooperation with [Riverside] and Client to resolve the matter of controversy. [MultiPlan's] obligations as a liaison under this Section 4.12 [*sic*] include but are not limited to: (a) response to [Riverside], complaints or issues within five (5) business days of [Riverside's] notice to [MultiPlan] of the same; and (b) facilitate communication between [Riverside], Client, User and/or agent within fifteen (15) days of request by [Riverside]. ***[MultiPlan]'s repeated and consistent failure to comply with this Section 4.13 shall constitute a breach of this Agreement***." (Emphasis added.)

## THE ACA BANS ANNUAL LIMITS ON EMERGENCY AND INPATIENT SERVICES

30.     The federal Affordable Care Act ("ACA") was enacted, in significant part, to expand access to affordable health insurance.

31.     To this end, one of the things the ACA requires is all individual and small group health plans to cover certain categories of services, or essential health benefits ("EHBs"), without exclusions or annual dollar limits. 42 U.S.C. §§ 18022, 300gg-11.

32.     The ACA sets out ten specific EHBs that individual and small group health plans must cover. 42 U.S.C. § 18022(b). These include "emergency services," which are a form of outpatient services, and "hospitalization," or inpatient services. *Ibid.*

33.     Unlike individual and small group health plans, self-insured plans are not required to offer

EHBs, but if they chose to do so, then they too **cannot place annual dollar limits on those EHBs**. 42 U.S.C. § 300gg–11(a)(1); 81 Fed. Reg. 75316 (Oct. 31, 2016) ("Under the Affordable Care Act, self-insured group health plans, large group market health plans, and grandfathered health plans are not required to offer EHB, but **they generally cannot place lifetime or annual dollar limits on services they cover that are considered EHB**.") (emphasis added).[2]

## RIVERSIDE PROVIDED MEDICALLY NECESSARY EMERGENCY AND INPATIENT CARE TO PATIENT

34.     In August 2019, Patient presented to Riverside's ED following a high-speed motorcycle accident. Riverside later learned that Patient had insurance that provided access to the MultiPlan PPO network. Riverside also received a copy of Patient's insurance card with the MultiPlan logo on it.

35.     Riverside provided medically necessary services to Patient. All of the services rendered to Patient fall within the EHBs of "Emergency services" and/or "Hospitalization." 42 U.S.C. § 18022(b).

36.     On information and belief, at the time services were rendered in 2019, Patient was insured by a MEC Premier Plan offered by Apex Management Group through Patient's employer (the "Plan").

## RIVERSIDE RAISED WITH DEFENDANTS THAT THE PURPORTED COVERAGE LIMITATION IS UNLAWFUL

37.     On September 3, 2019, Riverside billed Defendants for the services provided to Patient with total charges of $1,995,262.00, and expected to be paid pursuant to the Participating Facility Agreement with Multiplan, which for this case equals $1,636,114.84.

38.     In October 2019, Riverside learned from RCI that Defendants refused to pay the bill at the MultiPlan PPO network rate, due to the Plan's alleged $2,500 Annual Coverage Limit. Defendants' position was that they were only going to pay the $2,500 Annual Coverage Limit and nothing more.

39.     Riverside responded by informing Defendants that because the ACA bans lifetime and

---

[2] *See also* Frequently Asked Questions on Essential Health Benefits Bulletin, CMS, https://www.cms.gov/cciio/resources/files/downloads/ehb-faq-508.pdf ("Under the Affordable Care Act, self-insured group health plans, large group market health plans, and grandfathered health plans are not required to offer EHB. However, the prohibition in PHS Act section 2711 on imposing annual and lifetime dollar limits on EHB does apply to self-insured group health plans, large group market health plans, and grandfathered group market health plans. These plans are permitted to impose non-dollar limits, consistent with other guidance, on EHB as long as they comply with other applicable statutory provisions.").

annual coverage limits for EHBs offered by self-insured products, including the Plan, their attempt to enforce the $2,500 Annual Coverage Limit against Riverside was illegal under federal law.

40.     Immediately thereafter, the parties entered negotiations to reach a compromise on payment for Patient's care.

41.     In October 2019, MultiPlan faxed Riverside a draft compromise agreement for this case, dated October 24, 2019, in which MultiPlan represented it was acting as Apex Management Group's "contracted agent." MultiPlan, on Apex Management Group's behalf, offered to pay $987,366.00 as settlement in full for the bill for Patient's hospital stay. That figure was less than what would otherwise be owed to Riverside pursuant to the Multiplan PPO network rate.

42.     Riverside accepted Defendants' offer to pay $987,366.00 and faxed an executed copy of the Single Case Agreement back to Jammie Winsor with MultiPlan, as the Single Case Agreement instructed. Attached as **Exhibit A** is a true and correct copy of the signed Single Case Agreement (with patient health information redacted).

43.     On October 29, 2019, Riverside spoke with Ms. Winsor, a senior claims resolution specialist at MultiPlan. Ms. Winsor confirmed receipt of the signed Single Case Agreement and indicated that it had been approved for payment and would be paid in the near future.

44.     Over the next month, Riverside repeatedly contacted Ms. Winsor to check about payment status and to confirm payment was forthcoming. Ms. Winsor represented, among other things, that she would escalate the issue to upper management to have payment expedited.

45.     On December 11, 2019, MultiPlan informed Riverside that, despite entering into the Single Case Agreement, Defendants would only pay $2,500. On December 18, 2019, RCI issued payment to Riverside in the amount of $2,500.

46.     Time and time again, Riverside has requested that Defendants correct their significant underpayment, including in correspondence dated January 16, 2020, September 7, 2021, March 15, 2022, and November 10, 2023, to no avail.

47.     To date, Defendants have paid only $2,500 for Patient's month-long hospital stay in 2019. Defendants have never contested the medical necessity of the services provided to them for the Patient.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### COUNT I - BREACH OF WRITTEN CONTRACT

(Against MultiPlan and Apex Management Group)

48.     Riverside incorporates all allegations set forth above as though fully set forth herein.

49.     Riverside and MultiPlan are parties to the Participating Facility Agreement under which MultiPlan has obligations to Riverside as described above.

50.     MultiPlan then negotiated and executed the Single Case Agreement on behalf of Apex Management Group for a further discount on medical services that Riverside provided to Defendants for Patient.

51.     Through the Single Case Agreement, Riverside agreed to accept payment from Defendants at a discounted rate off the amount otherwise owed under the Participating Facility Agreement for Patient's admission, in exchange for, among other things, the assurance that Defendants would pay the amount agreed to.

52.     As described above, Defendants MultiPlan and Apex Management Group breached the Single Case Agreement by failing to pay Riverside in accordance with the terms of the Single Case Agreement.

53.     It is Riverside's understanding that Defendants base their breach on the $2,500 Annual Coverage Limit, which is unlawful under federal law.

54.     Both Emergency services and Hospitalization are EHBs. 42 U.S.C. § 18022(b). Apex Management Group voluntarily elected to provide coverage for these EHBs, as part of its MEC Premier Plan. Accordingly, under federal law, Defendants could not implement the $2,500 Annual Coverage Limit in the first instance and cannot now enforce it against Riverside. 42 U.S.C. § 300gg–11(a)(1).

55.     In addition, MultiPlan has breached the Participating Facility Agreement by failing to "obligate [Apex Management Group/RCI] to comply with the terms of this Agreement, including but not limited to the obligation to pay, or require [Apex Management Group/RCI] to pay for Covered Services rendered to Participants" in accordance with the Participating Facility Agreement, as required under Section 4.3, or in accordance with the terms of the separately negotiated Single Case Agreement.

56.     Section 4.13 of the Participating Facility Agreement further provides that "in the event of a dispute between [Riverside] and Client, or any authorized agent acting on behalf of Client relating to

compliance with the term of this Agreement, MPI will act as a liaison and work in cooperation with [Riverside] and Client to resolve the matter of controversy. [MultiPlan's] obligations as a liaison under this Section 4.12 include but are not limited to: (a) response to [Riverside], complaints or issues within five (5) business days of [Riverside's] notice to [MultiPlan] of the same; and (b) facilitate communication between [Riverside], Client, User and/or agent within fifteen (15) days of request by [Riverside] [MultiPlan's] repeated and consistent failure to comply with this Section 4.13 shall constitute a breach of this Agreement."

57. Riverside is informed and believes that MultiPlan failed to act as a liaison to resolve the dispute here. In fact, despite being included on the appeals and further correspondence with Apex Management Group and RCI about payment of the bill, Riverside is unaware of any involvement by MultiPlan to attempt to act as a liaison to resolve payment of the bill after it negotiated a further discount of the rates in the Participating Facility Agreement through the Single Case Agreement. Therefore, MultiPlan failed to comply with its obligations under Sections 4.3 and 4.13 of the Participating Facility Agreement, causing damages to Riverside in an amount to be proved at trial, of at least the principal owed under the Single Case Agreement for these services.

58. MultiPlan's breaches of Section 4.3 and 4.13 have frustrated, excused, and estopped MultiPlan from arguing that it is not liable for Riverside's damages for nonpayment of the bill. The notion of Riverside looking solely to Apex Management Group or RCI is inexorably tied to MultiPlan complying with its above-stated obligations under the Participating Facility Agreement, and with California law, regarding MultiPlan taking the necessary steps for its network lessee's compliance with the Participating Facility Agreement and subsequent agreements negotiated by MultiPlan on behalf of its Clients.

59. Riverside performed all the terms and conditions of the Participating Facility Agreement and Single Case Agreement except to the extent the actions, omissions, and inactions of Defendants have frustrated and excused such performance.

60. As a direct and proximate result of MultiPlan and Apex Management Group's breach of the Single Case Agreement, and MultiPlan's breach of the Participating Facility Agreement, Riverside has been damaged by at least $984,866.00 under the Single Case Agreement, and if that agreement does

not apply, then by at least $1,636,114.84 under the Participating Facility Agreement.

## COUNT II - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Against MultiPlan)

61.     Riverside incorporates all allegations set forth above as though fully set forth herein.

62.     MultiPlan's failure to ensure that Clients pay for bills in accordance with the terms of the Participating Facility Agreement or the subsequent Single Case Agreement, and conduct, or lack thereof, as "liaison" to resolve disputes, breached the Participating Facility Agreement's implied covenant of good faith and fair dealing.

63.     If MultiPlan contends payment of the bill was the sole responsibility of Apex Management Group or RCI, who MultiPlan permitted to access Riverside's services using the Participating Facility Agreement's discounted rates pursuant to Section 4.3 and 4.13 of the Participating Facility Agreement and then subsequently acted on behalf of Apex Management Group to negotiate the Single Case Agreement, then Riverside is informed and believes that MultiPlan took actions and/or omissions to undercut the Participating Facility Agreement's requirement that MultiPlan (a) "will obligate the Client to comply with the terms of this Agreement, including but not limited to the obligation to pay, or require User to pay, for Covered Services rendered to Participants…" and (b) "act as a liaison and work in cooperation with [Riverside] and Client to resolve the matter of controversy."

64.     Riverside is informed and believes that these actions and omissions by MultiPlan occurred when MultiPlan handled lease contracting, claims pricing, claims processing, claims reviews, claims payment, claims appeals, utilization management, medical management, and/or other administrative services for Apex Management Group. MultiPlan performed these tasks in a manner that undercut MultiPlan's contractual requirements that (a) Clients compensate Riverside in accordance with the Participating Facility Agreement and (b) MultiPlan use reasonable efforts to facilitate Clients correct compensation to Riverside for services provided in accordance with the Participating Facility Agreement.

65.     Riverside further alleges that MultiPlan breached its duty of good faith and fair dealing when it sold access to its provider network, including access to Riverside's medical services, to entities such as Apex Management Group, which Riverside is informed and believes offers health plans that do not comply with the requirements of the ACA. As such, MultiPlan is offering access to Riverside's

medical services to entities that do not abide by the rates and terms set forth in the Participating Facility Agreement in violation of MultiPlan's obligations under the Participating Facility Agreement.

66.     MultiPlan's breaches of the implied covenant of good faith and fair dealing have deprived Riverside of the Participating Facility Agreement's benefits with regard to Clients and Users and undercut the related provisions of the Participating Facility Agreement addressing the status of Clients. The provision of the Participating Facility Agreement contemplating that Riverside would look to Clients for financial responsibility was premised directly and inexorably on the related provisions in the Participating Facility Agreement that MultiPlan would require Clients to compensate Riverside in accordance with the Participating Facility Agreement. The Participating Facility Agreement also presumed that MultiPlan would not sell access to Riverside's services to entities who offered illegal plans under the ACA.

67.     As a direct and proximate result of MultiPlan's breaches of the implied covenant of good faith and fair dealing, Riverside was not compensated in accordance with the provisions of the Participating Facility Agreement or the Single Case Agreement.

68.     Riverside has performed all the terms and conditions of the Participating Facility Agreement and the Single Case Agreement, except to the extent the actions, omissions, and inactions of MultiPlan have frustrated and excused such performance.

69.     Riverside has been damaged by MultiPlan's breaches of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

70.     Accordingly, MultiPlan now should be held liable for damages to Riverside, in an amount to be proven at trial.

## COUNT III - INTENTIONAL MISREPRESENTATION/OMISSION

(Against MultiPlan and Apex Management Group)

71.     Riverside incorporates all allegations set forth above as though fully set forth herein.

72.     As alleged above, Defendants affirmatively represented to Riverside that they would pay $987,366.00 in compromise of Patient's bill, by entering into the Single Case Agreement. When agreeing to pay this amount, Defendants never stated that they would instead try to enforce the illegal $2,500 Annual Coverage Limit to reduce payment.

73.     At the times that these representations and concealments occurred, Defendants knew that

the representations that Defendants would pay $987,366.00 in compromise of Patient's bill were false. Defendants nonetheless made these representations knowing that they were false, and/or made recklessly and without regard for their truth.

74.     Defendants intended that Riverside rely on these representations and concealments.

75.     Riverside reasonably relied on Defendant's representations and expected that Defendants would pay $987,366.00 under the Single Case Agreement.

76.     At no point during the negotiations after Riverside explained to Defendants that the $2,500 Annual Coverage Limit violated federal law did Defendants say they would continue to attempt to impose this illegal coverage limitation on EHBs rather than comply with the Single Case Agreement that the parties were negotiating.

77.     Riverside was substantially harmed when Defendants chose to pay just 0.25% of the agreed amount.

78.     Accordingly, Riverside was damaged by at least $984,866.00, or in the alternative, $1,636,114.84, consistent with Defendants' promises to Riverside.

79.     Riverside is informed and believes that Defendants obtained the Single Case Agreement through fraud. The fact that (1) Riverside told Defendants the 2,500 Annual Coverage Limit was illegal before the parties negotiated the Single Case Agreement; (2) Defendants then negotiated the Single Case Agreement to pay $984,866.00 for the services, and (3) Defendants still paid at the illegal 2,500 Annual Coverage Limit, indicate that Defendants had no intention to comply with the payment amount in the Single Case Agreement when they entered into it. Therefore, Defendants also should have to pay punitive damages for their fraud.

## COUNT IV - NEGLIGENT MISREPRESENTATION/OMISSION

(Against MultiPlan and Apex Management Group)

80.     Riverside incorporates all allegations set forth above as though fully set forth herein.

81.     As alleged above, Defendants affirmatively represented to Riverside that they would pay $987,366.00 in compromise of Patient's bill, by entering into the Single Case Agreement. When agreeing to pay this amount, Defendants never stated that they would instead try to enforce the illegal $2,500 Annual Coverage Limit to reduce payment.

82.     At the times that these representations and concealments occurred, Defendants had no reasonable basis to believe that they would comply with agreed upon payment amount in the Single Case Agreement.

83.     Defendants intended that Riverside rely on these representations and concealments.

84.     Riverside reasonably relied on Defendants' representations and expected that Defendants would pay $987,366.00 under the Single Case Agreement.

85.     At no point during the negotiations after Riverside explained to Defendants that the $2,500 Annual Coverage Limit violated federal law did Defendants say they would continue to attempt to impose this illegal coverage limitation on EHBs rather than comply with the Single Case Agreement that the parties were negotiating.

86.     Riverside was substantially harmed when Defendants chose to pay just 0.25% of the agreed amount.

87.     Accordingly, Riverside was damaged by at least $984,866.00, or in the alternative, $1,636,114.84, consistent with Defendants' promises to Riverside.

## COUNT IV – INTENTIONAL INTERFERENCE WITH CONTRACT

### (Against RCI)

88.     Riverside incorporates all allegations set forth above as though fully set forth herein.

89.     Riverside is informed and believes that RCI has acted "behind the scenes" to encourage and influence the other Defendants into refusing to pay Riverside in accordance with the terms of the Single Case Agreement, and/or the terms of the Participating Facility Agreement, including, but not limited to, seeking to use the illegal $2,500 Annual Coverage Limit as an excuse for violating the applicable contractual obligations.

90.     RCI knew that, given the care rendered by Riverside to Patient, Riverside had an economic relationship with the other Defendants in this case, which would have resulted in an economic benefit to Riverside. Specifically, Riverside is informed and believes that RCI knew that the other Defendants had entered into the Single Case Agreement, whereby they agreed to pay $987,366.00 in compromise of Patient's bill notwithstanding the $2,500 Annual Coverage Limit.  RCI also knew the Participating Facility Agreement's higher rates would have resulted in Defendants owing $1,636,114.84 were it not

for the Single Case Agreement.

91.     RCI intended to disrupt, and did disrupt, these agreements and relationships. Riverside is informed and believes that RCI is the TPA for most, if not all, of Apex Management Group's "skinny" health plans, which do not provide ACA-compliant coverage. Through this ongoing relationship, RCI has reason to know that the $2,500 Annual Coverage Limit is unlawful under federal law, and cannot be enforced against Riverside to reduce reimbursement under the Single Case Agreement or the Participating Facility Agreement.

92.     RCI has disrupted Riverside's relationship with the other Defendants in substantial ways. For instance, Riverside is informed and believes that RCI urged the other Defendants to apply the $2,500 Annual Coverage Limit to limit payment to Riverside, notwithstanding the terms of the Single Case Agreement or the Participating Facility Agreement. In addition, Riverside is informed and believes that RCI was responsible for processing payment on the account, and failed to remit $987,366.00 as required, but instead made sure that only $2,500 was paid to Riverside.

93.     Due to the ongoing nature of Apex Management Group's relationship with RCI, Riverside is informed and believes that RCI worked closely with Apex Management Group and/or MultiPlan to ensure that the illegal $2,500 Annual Coverage Limit was enforced, and that RCI and Apex Management Group were in frequent communication regarding Defendants' failure to properly pay Riverside. Riverside also suspects that RCI benefits financially when it causes the other Defendants not to honor the contractual obligations and instead use illegal caps on EHBs.

94.     As a direct and proximate result of RCI's interference, Riverside has been damaged in an amount to be proven at trial, due to the extensive efforts that it has been forced to pursue in order to obtain the correct compensation for Patient's admission – including significant legal costs, such as attorneys' fees, that Riverside has incurred and will incur to pursue the payment owed under the Single Case Agreement and/or the Participating Facility Agreement.

95.     Riverside further seeks punitive damages against RCI for its fraudulent behavior.

## COUNT V – NEGLIGENT INTERFERENCE WITH CONTRACT

(Against RCI)

96.     Riverside incorporates all allegations set forth above as though fully set forth herein.

97.     Riverside is informed and believes that RCI has acted "behind the scenes" to encourage and influence the other Defendants into refusing to pay Riverside in accordance with the terms of the Single Case Agreement, and/or the terms of the Participating Facility Agreement, including, but not limited to, seeking to use the illegal $2,500 Annual Coverage Limit as an excuse for violating the applicable contractual obligations.

98.     RCI knew or should have known that given the care rendered by Riverside to Defendants for Patient, Riverside had an economic relationship with the other Defendants in this case, which would have resulted in an economic benefit to Riverside. Specifically, Riverside is informed and believes that RCI knew that the other Defendants had entered into the Single Case Agreement, whereby they agreed to pay $987,366.00 in compromise of Patient's bill notwithstanding the $2,500 Annual Coverage Limit. RCI also knew the Participating Facility Agreement's higher rates would have resulted in Defendants owing $1,636,114.84 were it not for the Single Case Agreement.

99.     RCI knew or should have known that Riverside's economic relationship would be disrupted if RCI failed to act with reasonable care with respect to payment and processing of Patient's account.

100.    RCI failed to act with reasonable care when it interfered with Defendants' performance under the Participating Facility Agreement and Single Case Agreement.

101.    RCI intended to disrupt, and did disrupt, these agreements and relationships. Riverside is informed and believes that RCI is the TPA for most, if not all, of Apex Management Group's "skinny" health plans, which do not provide ACA-compliant coverage. Through this ongoing relationship, RCI has reason to know that the $2,500 Annual Coverage Limit is unlawful under federal law, and cannot be enforced against Riverside to reduce reimbursement under the Single Case Agreement or the Participating Facility Agreement.

102.    RCI has disrupted Riverside's relationship with the other Defendants in substantial ways. For instance, Riverside is informed and believes that RCI urged the other Defendants to apply the $2,500 Annual Coverage Limit to limit payment to Riverside, notwithstanding the terms of the Single Case Agreement or the Participating Facility Agreement. In addition, Riverside is informed and believes that RCI was responsible for processing payment on the account, and failed to remit $987,366.00 as required,

but instead made sure that only $2,500 was paid to Riverside.

103.    Due to the ongoing nature of Apex Management Group's relationship with RCI, Riverside is informed and believes that RCI worked closely with Apex Management Group and/or MultiPlan to ensure that the illegal $2,500 Annual Coverage Limit was enforced, and that RCI and Apex Management Group were in frequent communication regarding Defendants' failure to properly pay Riverside. Riverside also suspects that RCI benefits financially when it causes the other Defendants not to honor the contractual obligations and instead use illegal caps on EHBs.

104.    As a direct and proximate result of RCI's interference, Riverside has been damaged in an amount to be proven at trial, due to the extensive efforts that it has been forced to pursue in order to obtain the correct compensation for Patient's stay – including significant legal costs, such as attorneys' fees, that Riverside has incurred and will incur to pursue the payment owed under the Single Case Agreement and/or the Participating Facility Agreement.

## COUNT VI - DECLARATORY RELIEF

### (Against All Defendants)

105.    Riverside incorporates all allegations set forth above as though fully set forth herein.

106.    A present and actual controversy exist between the parties as to whether Defendants may rely on the illegal $2,500 Annual Coverage Limit to limit reimbursement owed to Riverside of $984,866.00 pursuant to the express terms of the Single Case Agreement and/or $1,636,114.84 pursuant to the Participating Facility Agreement. Riverside contends that Defendants' reliance on the $2,500 Annual Coverage Limit to reduce payment violates federal law. Riverside suspects that Defendants will contend that their reliance on the illegal $2,500 Annual Coverage Limit is appropriate and complies with such laws.

107.    Accordingly, Riverside seeks declaratory relief so that it and Defendants can know and understand how Defendants should have performed and need to perform going forward. This includes, without limitation, whether Defendants' reliance on the $2,500 Annual Coverage Limit was proper, or whether Defendants owe further payment under the Single Case Agreement at $984,866.00, and/or owes further payment under the Participating Facility Agreement at $1,636,114.84.

**PRAYER FOR RELIEF**

Wherefore, Riverside prays for judgment against Defendants and Does 1 through 10 as follows:

1.      For compensatory damages in an amount to be proven at trial;

2.      For punitive damages on the fraud causes of action;

3.      For declaratory relief as set forth above in the declaratory relief cause of action and as otherwise deemed appropriate;

4.      For any and all such other relief deemed just and appropriate, to the full extent available under any and all applicable laws and rules.

**DEMAND FOR JURY TRIAL**

Riverside demands a jury trial on all causes of action.


Dated:  December 8, 2023          KING & SPALDING LLP

                                 By:

                                 _____
                                     GLENN E. SOLOMON
                                     AMY L. O'NEILL
                                     ELIZABETH KEY
                                     *Attorneys for Plaintiff*

# Exhibit A

 **MultiPlan.**

# Fax Transmission

### AGREEMENT

**TO:** KENDALL YORK
Kendall.york@hcahealthcare.com
From #:817-436-6049 /Jammie Winsor

**DATE:** October 24, 2019
DOB: **12/24/1992**

---

**PATIENT:** REDACTED
**Date of Service:** REDACTED

**Multiplan Claim #:**191023186081
**Payor: Analytic Alternative dba APEX Mgmt Group**

---

**Analytic Alternative dba APEX Mgmt Group** as contracted with **MultiPlan** to facilitate resolution of the above referenced services for this claim. This agreement may expedite claim adjudication and decrease the Patient's responsibility.

Riverside Community Hospital Medical Center **agrees to accept the Proposed Amount listed below as payment in full (less any applicable deductible, co-insurance, or co-payment amounts in addition to non-covered items) for services rendered to this Patient on the following date(s):**

| Date of Service | Billed Charges | Proposed Amount |
|---|---|---|
| REDACTED | $1,995,262.00 | $987,366.00 ✓ |

By signing this agreement, Provider accepts this Proposed Amount and agrees to reduce the liability of the Patient and Payor. Provider agrees not to bill the Patient (or financially responsible party) for the difference between the Billed Charges and the Proposed Amount. Provider retains the right to bill the Patient (or financially responsible party) for items not covered under the Patient's benefit plan and for any applicable deductibles, co-insurance, or co-payments. Provider shall not waive any such patient responsibility amounts due directly from the patient (or other financially responsible party).

MultiPlan is not a payor and is not financially responsible for any payments due to the Provider. Payment of benefits, if any, is subject to the terms and conditions of the Patient's benefit plan. This letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor. Please feel free to contact us if you have any questions or concerns.

**Please sign below and fax back promptly to: 630-799-3524    If you have questions please immediately contact Jammie Winsor at 817-436-6049**

The signatory to this agreement represents and warrants that he/she is signing on behalf of Provider and is fully authorized to sign and commit Provider to all of its obligations and responsibilities under this agreement.

Please mail payment to:
Riverside Community Hospital
P.O. Box 409178
Atlanta, GA  30384-9178

October 24, 2019

_____
Authorized Representative's Signature

_____
Date

Brian C. Nelson
**Print Name**

Senior Counsel
**Title**

---

NOTICE OF CONFIDENTIALITY: Information included in and/or attached to this fax transmission may be confidential. This fax transmission is intended for the addressee(s) only. Any unauthorized disclosure, reproduction, or distribution of and /or any unauthorized action taken in reliance on the information in this fax is prohibited. If you believe that you receive this fax transmission in error, please notify the sender by reply transmission and destroy the fax without copying or disclosing it. Multiplan may also need to contact you for additional information as required by HIPAA or state law.

Claim 7082--Exhibit "A"

**To: Jammie Winsor**
Company:
Fax: 630-799-3524
Phone: MultiPlan

**From: Buffaloe John**
Company: Pas - Nashville West
Fax: (615) 886-4399
Phone: (615) 886-4398
Email: John.Buffaloe@Parallon.com

Sent: 10/24/2019 3:59:09 PM
Duration: 00:03:25
Number dialed: 916307993524
Remote ID: Fax Server
Result: Success
Pages: 2



**To: Jammie Winsor**
Company:
Fax: 630-799-3524
Phone: MultiPlan

**From: Buffaloe John**
Fax: (615) 886-4399
Phone: (615) 886-4398
E-mail: John.Buffaloe@Parallon.com

**NOTES:**

Signed reduction request agreement for REDACTED Multiplan claim #191023186081.

**Date and time of transmission:** Thursday, October 24, 2019 3:58:58 PM
**Number of pages including this cover sheet:** 02

Confirmation receipt generated by NOZ6841 on 10/24/2019 4:04:38 PM.

Claim 7082--Exhibit "B"

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Amy O'Neill - 294458
King & Spalding LLP, 621 Capitol Mall, Suite 1500, Sacramento, CA 95814

TELEPHONE NO.: (916) 321-4812  FAX NO. (Optional): (916) 321-4900
E-MAIL ADDRESS: aoneill@kslaw.com
ATTORNEY FOR (Name): Riverside Healthcare System, L.P. dba Riverside Community Hospita

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside 92501
BRANCH NAME: Riverside Historic Courthouse

Electronically FILED by Superior Court of California, County of Riverside on 12/08/2023 09:51 AM
Case Number CVRI2306599 0000077921704 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

CASE NAME:
Riverside Healthcare System, L.P. dba Riverside Community Hospital v Apex Management Group I,

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CVRI2306599 |
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[x] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): 7
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: December 8, 2023

Amy O'Neill
_____
(TYPE OR PRINT NAME)

► *(signature)* Amy L. O'Neill
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

Electronically FILED by Superior Court of California, County of Riverside on 12/08/2023 09:51 AM
Case Number CVRI2306599 0000077921705 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

| | |
|---|---|
| ☐ **BANNING** 311 E. Ramsey St., Banning, CA 92220 | ☐ **MURRIETA** 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225 | ☐ **PALM SPRINGS** 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ **CORONA** 505 S. Buena Vista, Rm. 201, Corona, CA 92882 | ☒ **RIVERSIDE** 4050 Main St., Riverside, CA 92501 |
| ☐ **MORENO VALLEY** 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | |

RI-CI032

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar Number and Address*)<br>Amy O'Neill  -  294458<br>King & Spalding LLP<br>621 Capitol Mall, Suite 1500<br>Sacramento, CA 95814 | *FOR COURT USE ONLY* |

TELEPHONE NO: (916) 321-4812          FAX NO. *(Optional)* (916) 321-4900
E-MAIL ADDRESS *(Optional)*: aoneill@kslaw.com
ATTORNEY FOR *(Name)*: Riverside Healthcare System, L.P. dba Riverside Community Hospital

PLAINTIFF/PETITIONER: Riverside Healthcare System, L.P. dba Riverside Community Hospital

DEFENDANT/RESPONDENT: Apex Management Group I, Inc., et al.

| CASE NUMBER: |
|---|
| CVRI2306599 |

## CERTIFICATE OF COUNSEL

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒   The action arose in the zip code of:  92501_____

☐   The action concerns real property located in the zip code of:  _____

☐   The Defendant resides in the zip code of:  _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 3115 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date  December 8, 2023_____

Amy O'Neill_____          ► _____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)                    *(SIGNATURE)*

**Page 1 of 1**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2306599

**Case Name:**    RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.

AMY L. O'NEILL
621 CAPITOL MALL, SUITE 1500
Sacramento, CA 95814

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| **06/05/2024** | **8:30 AM** | **Department 4** |
| Location of Hearing: | | |
| **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-533-0910 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)

 | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.

 | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.)

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 12/08/2023

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:  _J. DeRosier_
_____
J. DeRosier, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2306599

**Case Name:**   RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.

RIVERSIDE HEALTHCARE SYSTEM, L.P.

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|:---:|:---:|:---:|
| **06/05/2024** | **8:30 AM** | **Department 4** |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-533-0910 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)




| | |
|---|---|
| | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 12/08/2023

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:   _____
          J. DeRosier, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2306599

**Case Name:**    RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.

APEX MANAGEMENT GROUP I, INC.

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| **06/05/2024** | **8:30 AM** | **Department 4** |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-533-0910 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)




| | |
|---|---|
| | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 12/08/2023

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:  _J. DeRosier_____

J. DeRosier, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2306599

**Case Name:**   RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.


ANALYTIC ALTERNATIVE, LLC


## NOTICE OF CASE MANAGEMENT CONFERENCE


The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|:---:|:---:|:---:|
| **06/05/2024** | **8:30 AM** | **Department 4** |
| Location of Hearing: | | |
| **4050 Main Street, Riverside, CA 92501** | | |


No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.


**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-533-0910 #
Access Code: Press the # key (no number after the #)


Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)




| Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 12/08/2023

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:  _J. DeRosier_
_____
J. DeRosier, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2306599

**Case Name:**   RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.


MULTIPLAN INC.


## NOTICE OF CASE MANAGEMENT CONFERENCE


The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| **06/05/2024** | **8:30 AM** | **Department 4** |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |


No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.


**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-533-0910 #
Access Code: Press the # key (no number after the #)


Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)

 Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter.

 Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.)

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.

Dated: 12/08/2023

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:  _____
J. DeRosier, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2306599

**Case Name:**   RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.

REGIONAL CARE, INC.

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 06/05/2024 | 8:30 AM | Department 4 |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-533-0910 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

CI-NOCMC
(Rev. 03/02/22)

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

### CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the Notice of Case Management Conference on this date, by depositing said copy as stated above.


Dated: 12/08/2023                                           JASON B. GALKIN,
                                                            Court Executive Officer/Clerk of the Court



                                                    by:  _____
                                                            J. DeRosier, Deputy Clerk

CI-NOCMC
(Rev. 03/02/22)

Notice has been printed for the following Firm/Attorneys or Parties: CVRI2306599

O'NEILL, AMY L.
621 CAPITOL MALL, SUITE 1500
Sacramento, CA 95814

RIVERSIDE HEALTHCARE SYSTEM, L.P.

ANALYTIC ALTERNATIVE, LLC

APEX MANAGEMENT GROUP I, INC.

REGIONAL CARE, INC.

MULTIPLAN INC.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**   CVRI2306599

**Case Name:**   RIVERSIDE HEALTHCARE SYSTEM, L.P. vs APEX MANAGEMENT GROUP I, INC.

## NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Daniel Ottolia in Department 4  for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316).  Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml.  If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing.  If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

Dated: 12/08/2023

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:   _____

J. DeRosier, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)

RI-ADR001-INFO



SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
www.riverside.courts.ca.gov

**Self-represented parties:** https://www.riverside.courts.ca.gov/SelfHelp/self-help.php

---

**ALTERNATIVE DISPUTE RESOLUTION (ADR) –**
*INFORMATION PACKAGE*


**\*\*\* THE PLAINTIFF MUST SERVE THIS INFORMATION PACKAGE
ON EACH PARTY WITH THE COMPLAINT. \*\*\***

---

## What is ADR?

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. The main types are mediation, arbitration, and settlement conferences.

## Advantages of ADR:

- Faster:  ADR can be done in a 1-day session within months after filing the complaint.
- Less expensive:  Parties can save court costs and attorneys' and witness fees.
- More control:  Parties choose their ADR process and provider.
- Less stressful:  ADR is done informally in private offices, not public courtrooms.

## Disadvantages of ADR:

- No public trial:  Parties do not get a decision by a judge or jury.
- Costs:  Parties may have to pay for both ADR and litigation.

## Main Types of ADR:

**Mediation:**    In mediation, the mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to create a settlement agreement that is acceptable to everyone.  If the parties do not wish to settle the case, they go to trial.

Mediation may be appropriate when the parties:
- want to work out a solution but need help from a neutral person; or
- have communication problems or strong emotions that interfere with resolution; or
- have a continuing business or personal relationship.

Mediation is not appropriate when the parties:
- want their public "day in court" or a judicial determination on points of law or fact;
- lack equal bargaining power or have a history of physical/emotional abuse.

**Arbitration:**   Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration the arbitrator's decision is final; there is no right to trial.  In "non-binding" arbitration, any party can request a trial after the arbitrator's decision.  The court's mandatory Judicial Arbitration program is non-binding.

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR001-INFO [Rev. 06/10/21]

Arbitration may be appropriate when the parties:
- want to avoid trial, but still want a neutral person to decide the outcome of the case.

Arbitration is not appropriate when the parties:
- do not want to risk going through both arbitration and trial (Judicial Arbitration)
- do not want to give up their right to trial (binding arbitration)

**Settlement Conferences:**  Settlement conferences are similar to mediation, but the settlement officer usually tries to negotiate an agreement by giving strong opinions about the strengths and weaknesses of the case, its monetary value, and the probable outcome at trial.  Settlement conferences often involve attorneys more than the parties and often take place close to the trial date.

## RIVERSIDE COUNTY SUPERIOR COURT ADR REQUIREMENTS

ADR Information and forms are posted on the ADR website:
https://www.riverside.courts.ca.gov/Divisions/ADR/ADR.php

### General Policy:
Parties in most general civil cases are expected to participate in an ADR process before requesting a trial date and to participate in a settlement conference before trial.  (Local Rule 3200)

### Court-Ordered ADR:
Certain cases valued at under $50,000 may be ordered to judicial arbitration or mediation. This order is usually made at the Case Management Conference. See the "Court-Ordered Mediation Information Sheet" on the ADR website for more information.

### Private ADR (for cases not ordered to arbitration or mediation):
Parties schedule and pay for their ADR process without Court involvement.  Parties may schedule private ADR at any time; there is no need to wait until the Case Management Conference. See the "Private Mediation Information Sheet" on the ADR website for more information.

### BEFORE THE CASE MANAGEMENT CONFERENCE (CMC), ALL PARTIES MUST:
1. Discuss ADR with all parties at least 30 days before the CMC.  Discuss:
   - Your preferences for mediation or arbitration.
   - Your schedule for discovery (getting the information you need) to make good decisions about settling the case at mediation or presenting your case at an arbitration.
2. File the attached "Stipulation for ADR" along with the Case Management Statement, if all parties can agree.
3. Be prepared to tell the judge your preference for mediation or arbitration and the date when you could complete it.

(Local Rule 3218)

### RIVERSIDE COUNTY ADR PROVIDERS INCLUDE:
- The Court's Civil Mediation Panel (available for both Court-Ordered Mediation and Private Mediation). See https://adr.riverside.courts.ca.gov/Home/CivilMedPanel or ask for the list in the civil clerk's office, attorney window.
- Riverside County ADR providers funded by DRPA (Dispute Resolution Program Act): Dispute Resolution Service (DRS) Riverside County Bar Association:  (951) 682-1015 Dispute Resolution Center, Community Action Partnership (CAP):  (951) 955-4900 Chapman University School of Law Mediation Clinic (services only available at the court)

Adopted for Mandatory Use
Riverside Superior Court
RI-ADR001-INFO [Rev. 06/10/21]

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225
☐ **7 CFCBS** í ͼ͡ Ú͠Ō̂ ^} æ̃X æ͠ cæ͠Ē͞U͠{ Ḛ̃C͞F̃Z̃Ō̂[ ¦{ } æ͠Z̃OC̃ÈÃÇ Ì G
☐ **MORENO VALLEY** 13800 Heacock St. #D201, Moreno Valley, CA 92553

☐ **MURRIETA** 30755-D Auld Rd., Murrieta, CA 92563
☐ **PALM SPRINGS** 3255 Tahquitz Canyon Way, Palm Springs, CA 92262
☐ **RIVERSIDE** 4050 Main St., Riverside, CA 92501

**RI-ADR00%**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar Number and Address*) | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO:          FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | CASE MANAGEMENT CONFERENCE DATE(S): |

## STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)
(CRC 3.2221; Local Rule, Title 3, Division 2)

**Court-Ordered ADR:**

Eligibility for Court-Ordered Mediation or Judicial Arbitration will be determined at the Case Management Conference.  If eligible, the parties agree to participate in:

☐ Mediation          ☐ Judicial Arbitration (non-binding)

**Private ADR:**

If the case is not eligible for Court-Ordered Mediation or Judicial Arbitration, the parties agree to participate in the following ADR process, which they will arrange and pay for without court involvement:

☐ Mediation          ☐ Judicial Arbitration (non-binding)
☐ Binding Arbitration          ☐ Other (describe): _____

Proposed date to complete ADR: _____

## **SUBMIT THIS FORM ALONG WITH THE CASE MANAGEMENT STATEMENT.**

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

Adopted for Mandatory Use
Riverside Superior Court
Form RI-ADR001  [Rev. 01/01/12]
[Reformatted 06/01/16]

**ALTERNATIVE DISPUTE RESOLUTION
(ADR) STIPULATION**

Statutory Authority
riverside.courts.ca.gov/localfrms/localfrms.shtml

Electronically FILED by Superior Court of California, County of Riverside on 12/08/2023 03:46 PM
Case Number CVRI2306599 0000077993874 - Jason B. Galkin, Executive Officer/Clerk of the Court By Carmen Mundo, Clerk

GLENN E. SOLOMON (SBN 155674)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:     (213) 443-4355
Facsimile:     (213) 443-4310
Email:         *gsolomon@kslaw.com*

AMY L. O'NEILL (SBN 294458)
ELIZABETH K. KEY (SBN 323544)
**KING & SPALDING LLP**
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone:     (916) 321-4800
Facsimile:     (916) 321-4900
Email:         *aoneill@kslaw.com*
               *ekey@kslaw.com*

Attorneys for Plaintiff Riverside Community Hospital

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL,<br><br>        Plaintiff,<br><br>   v.<br><br>APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. CVRI2306599<br><br>**PLAINTIFF RIVERSIDE COMMUNITY HOSPITAL'S NOTICE OF ERRATA REGARDING COMPLAINT** |

**NOTICE OF ERRATA REGARDING COMPLAINT**

**TO THE COURT AND TO COUNSEL OF RECORD FOR ALL PARTIES:**

**PLEASE TAKE NOTICE** that Plaintiff Riverside Healthcare System, L.P., dba Riverside Community Hospital ("Plaintiff" or "Riverside") hereby gives notice of the following errata:

On December 8, 2023, Plaintiff filed a Complaint in Riverside Superior Court (Case No. CVRI2306599). Exhibit A to the Complaint was inadvertently omitted.

Included herewith as **Attachment 1** is a true and correct copy of the Complaint which contains the mistakenly omitted Exhibit A.

Dated:  December 8, 2023                          KING & SPALDING LLP

                                    By:  _____
                                           GLENN E. SOLOMON
                                           AMY L. O'NEILL
                                           ELIZABETH KEY
                                           *Attorneys for Plaintiff*

# ATTACHMENT A

Electronically FILED by Superior Court of California, County of Riverside on 12/08/2023 09:51 AM
Case Number CVRI2306599 0000077921703 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

GLENN E. SOLOMON (SBN 155674)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310
Email:        *gsolomon@kslaw.com*

AMY L. O'NEILL (SBN 294458)
ELIZABETH K. KEY (SBN 323544)
**KING & SPALDING LLP**
621 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone:    (916) 321-4800
Facsimile:    (916) 321-4900
Email:        *aoneill@kslaw.com*
              *ekey@kslaw.com*

Attorneys for Plaintiff Riverside Community Hospital

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL,<br><br>       Plaintiff,<br><br>   v.<br><br>APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. CVRI2306599<br><br>**COMPLAINT FOR:**<br><br>1.  **BREACH OF WRITTEN CONTRACT**<br>2.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3.  **INTENTIONAL MISREPRESENTATION/OMISSION**<br>4.  **NEGLIGENT MISREPRESENTATION/OMISSION**<br>5.  **INTENTIONAL INTERFERENCE WITH CONTRACT**<br>6.  **NEGLIGENT INTERFERENCE WITH CONTRACT**<br>7.  **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Riverside Healthcare System, L.P., dba Riverside Community Hospital ("Riverside") alleges as follows:

1.     This lawsuit arises from Defendants' failure to properly pay Riverside for the medical care provided to a motorcyclist critically injured by a high speed rear-end collision ("Patient").[1] The bill for Patient's near one-month stay totaled $1,995,262.00.

2.     MultiPlan Inc., and Analytic Alternative, LLC dba Apex Management Group entered into a written one-time single case agreement with Riverside ("Single Case Agreement"), in which Riverside agreed to accept from these Defendants a fraction of the total bill, or $987,366.00 – i.e., 50% off for this one case.

3.     Notwithstanding this explicit written agreement, Defendants instead paid Riverside just $2,500 **– a mere 0.25% of the agreed amount**. They did so on the purported basis that Patient's insurance only covers inpatient and outpatient hospital services up to a maximum of $2,500 per calendar year (the **"$2,500 Annual Coverage Limit"**).

4.     Defendants' payment of $2,500 instead of $987,366.00, as agreed, is a blatant breach of a binding and enforceable written contract.

5.     Defendants also are engaged in a calculated scheme to circumvent federal law, which strictly outlaws annual limits on certain services defined as Essential Health Benefits ("EHBs") which includes "Emergency" and "Hospitalization" services. Yet, Defendants purport to have an annual cap for these EHBs at $2,500.

6.     Since 2019, Riverside has diligently and repeatedly sought reimbursement of the outstanding amounts owed by Defendants, but Defendants have refused to pay a cent more.

7.     Defendants' arbitrary and capricious failure to correct their significant underpayment in contravention of the clear terms of the Single Case Agreement, and the law, leaves Riverside no choice but to file this lawsuit to seek recovery of the amounts owed.

---

[1] Riverside has omitted Patient's identity to protect privacy. Riverside engaged in pre-filing communications with Defendants about the Patient and is informed and believes this Complaint's allegations sufficiently identify Patient for Defendants. Riverside will provide confirming identifying information to Defendants and the Court outside the context of a public filing and/or pursuant to a Court order and protective order if needed.

**THE PARTIES**

8.      Plaintiff Riverside is a highly respected 517-bed acute care facility in Riverside, California. It operates a 24-hour Emergency Department ("ED") and is the largest Level I Trauma center in the Inland Empire. As a Level I Trauma center, Riverside serves as a tertiary care facility capable of providing care to even the most severely injured patients. Additionally, Riverside is a STEMI (acute heart attack) Receiving Center, an Accredited Chest Pain Center, and a Comprehensive Stroke Center. Riverside provides emergency and hospitalization services to patients who present to the ED, including the Patient here.

9.      On information and belief, Defendant Apex Management Group I, Inc. is a for-profit Illinois corporation with headquarters in Western Springs, Illinois.

10.      On information and belief, Defendant Analytic Alternative, LLC ("Analytic Alternative") is a for-profit Illinois limited liability corporation with headquarters in Willowbrook, Illinois. On information and belief, Analytic Alternatives was involuntarily dissolved in August 2018 but appears to now be operating as Apex Management Group I, Inc.

11.      On information and belief, Apex Management Group I., Inc. and/or Analytic Alternative, LLC do business as Apex Management Group, and are collectively referred to herein as "Apex Management Group."

12.      On information and belief, Defendant MultiPlan Inc. ("MultiPlan") is a for-profit Delaware corporation with headquarters in New York, New York. On information and belief, MultiPlan is a health network provider that arranges, manages, and offers national preferred provider organization ("PPO") plans. MultiPlan maintains offices in Lake Forest, California and operates and does business all throughout the state of California.

13.      On information and belief, Defendant Regional Care, Inc. ("RCI") is a Third-Party Administrator ("TPA") of healthcare benefits who acts on behalf of employers to administer health care benefits. Riverside is informed and believes that RCI is headquartered in Scottsbluff, Nebraska and operates and does business all throughout the state of California. Riverside is informed and believes that RCI acted as the TPA of the health benefit plan at issue here.

14.      The way Defendants have conducted themselves when communicating to Riverside about

Patient, the bill for Patient's care, and the Single Case Agreement, has made it difficult, if not impossible, to determine which of them is liable. It has also made it difficult, if not impossible, to determine which of them has authority to speak on behalf of Patient's health benefit plan and/or for each other, as well as the nature of the relationship between them, whether agents, independent contractors, or some other status.

15.     Riverside is unaware of the true names and capacities of defendants sued as Does 1 through 10. Riverside alleges that each of these fictitiously named defendants are responsible and liable in some manner for the acts and omissions described in this complaint. Riverside will seek leave of court to amend this complaint to assert the identities and capacities of the defendants named as Does 1 through 10 when such identities and capacities have been ascertained.

16.     At all relevant times, each defendant acted in concert with one or more of the other defendants, and intended and did knowingly participate in the events, acts, transactions, practices, and courses of conduct described in this complaint.

17.     At all relevant times, in committing the acts and omissions described in this complaint, each defendant caused, aided, abetted, facilitated, encouraged, authorized, permitted, and/or ratified the wrongful acts and omissions of the other defendants.

## VENUE AND JURISDICTION

18.     The actions described herein occurred, were accomplished, and/or had their purposeful effect in Riverside, California. Accordingly, this Court has jurisdiction over such matters pursuant to Code of Civil Procedure section 410.10 and Section 10 of Article VI of the California Constitution.

19.     Venue is proper pursuant to Code of Civil Procedure section 395.

## THE RIVERSIDE/MULTIPLAN CONTRACT

20.     MultiPlan and Riverside have a written Participating Facility Agreement, effective January 1, 2012, with rate amendments occurring in 2017 and 2018. The Participating Facility Agreement remains in effect to the present.

21.     Through this Participating Facility Agreement, Riverside agreed to participate in MultiPlan's Provider Network and accept payment for services at discounted rates off Riverside's otherwise applicable billed charges, in exchange for, among other things, the assurance that MultiPlan

would ensure timely compensation to Riverside in accordance with the terms of the Participating Facility Agreement for services rendered to members of the plans that access MultiPlan's network.

22.     Section 4.3 of the Participating Facility Agreement, entitled "Client Agreements," states that "[MultiPlan] agrees that it has entered into written agreements with Clients for the use of the Network. Each agreement between [MultiPlan] and a Client will obligate the Client to comply with the terms of this Agreement, including but not limited to the obligation to pay, or require User to pay, for Covered Services rendered to Participants in accordance with the provisions of Article V of this Agreement."

23.     Section 5.2 of the Participating Facility Agreement, entitled "Payment for Covered Services," states that "Client will, within thirty (30) business days of receipt of a Clean Claim, pay or require User to pay Facility for Covered Services, as full compensation, the Contract Rate in accordance with the terms of this Agreement … in order to obtain the benefit of the Contract Rate."

24.     The term "Client" is defined in Section 1.6 of the Participating Facility Agreement as, "an insurance company, employer health plan, Taft-Hartley Fund, or other organization that sponsors, or administers on behalf of a User, as applicable, one or more Programs and is required to pay, or requires User to pay, for the provisions of Covered Services to Participants accessing the Network."

25.     The term "User" is defined at Section 1.21 of the Participating Facility Agreement and "means any corporation, partnership, labor union, association, program, employer or any other entity responsible for the payment of Covered Services. Client may also be a User." Apex Management Group and RCI are considered "Clients" and/or "Users" under the Participating Facility Agreement.

26.     Section 1.10 of the Participating Facility Agreement defines "Covered Services" as "health care treatment and supplies, including but not limited to Emergency Services, rendered by a Network Provider and provided to a Participant for which a User is responsible for payment pursuant to the terms of a Program and/or applicable state and federal law."

27.     Section 4.1 of the Participating Facility Agreement, entitled "Limitations," provides that, "[MultiPlan's] duties are limited to those specifically set forth herein. [MultiPlan] does not determine benefits eligibility or availability for Participants and does not exercise any discretion or control as to Program assets, with respect to policy, payment interpretation, practices, or procedures. [MultiPlan] is

not the administrator insurer underwriter, or guarantor of Programs, and MPI is not liable for the payment of services under Programs."

28.     Section 4.8 of the Participating Facility Agreement, entitled "Administrative Duties," provides, "Subject to the limitations specified in Section 4.1 of this Agreement, [MultiPlan] shall perform all administrative duties in compliance with its obligations and responsibilities as set forth in this Agreement, and shall use commercially reasonable efforts to promptly respond to [Riverside's] requests for information (e.g., provider directories, Benefit Program designs claims information, utilization data etc…). In order to assist [Riverside] in its efforts to comply with, and corroborate [MultiPlan's] Clients' and Users' performance of, their respective obligations hereunder."

29.     Section 4.13 of the Participating Facility Agreement provides, "[MultiPlan] as Liaison. In the event of a dispute between [Riverside] and Client, or any authorized agent acting on behalf of Client relating to compliance with the term of this Agreement, [MultiPlan] will act as a liaison and work in cooperation with [Riverside] and Client to resolve the matter of controversy. [MultiPlan's] obligations as a liaison under this Section 4.12 [*sic*] include but are not limited to: (a) response to [Riverside], complaints or issues within five (5) business days of [Riverside's] notice to [MultiPlan] of the same; and (b) facilitate communication between [Riverside], Client, User and/or agent within fifteen (15) days of request by [Riverside]. ***[MultiPlan]'s repeated and consistent failure to comply with this Section 4.13 shall constitute a breach of this Agreement***." (Emphasis added.)

### THE ACA BANS ANNUAL LIMITS ON EMERGENCY AND INPATIENT SERVICES

30.     The federal Affordable Care Act ("ACA") was enacted, in significant part, to expand access to affordable health insurance.

31.     To this end, one of the things the ACA requires is all individual and small group health plans to cover certain categories of services, or essential health benefits ("EHBs"), without exclusions or annual dollar limits. 42 U.S.C. §§ 18022, 300gg-11.

32.     The ACA sets out ten specific EHBs that individual and small group health plans must cover. 42 U.S.C. § 18022(b). These include "emergency services," which are a form of outpatient services, and "hospitalization," or inpatient services. *Ibid.*

33.     Unlike individual and small group health plans, self-insured plans are not required to offer

EHBs, but if they chose to do so, then they too **cannot place annual dollar limits on those EHBs**. 42 U.S.C. § 300gg–11(a)(1); 81 Fed. Reg. 75316 (Oct. 31, 2016) ("Under the Affordable Care Act, self-insured group health plans, large group market health plans, and grandfathered health plans are not required to offer EHB, but **they generally cannot place lifetime or annual dollar limits on services they cover that are considered EHB**.") (emphasis added).[2]

## RIVERSIDE PROVIDED MEDICALLY NECESSARY EMERGENCY AND INPATIENT CARE TO PATIENT

34.     In August 2019, Patient presented to Riverside's ED following a high-speed motorcycle accident. Riverside later learned that Patient had insurance that provided access to the MultiPlan PPO network. Riverside also received a copy of Patient's insurance card with the MultiPlan logo on it.

35.     Riverside provided medically necessary services to Patient. All of the services rendered to Patient fall within the EHBs of "Emergency services" and/or "Hospitalization." 42 U.S.C. § 18022(b).

36.     On information and belief, at the time services were rendered in 2019, Patient was insured by a MEC Premier Plan offered by Apex Management Group through Patient's employer (the "Plan").

## RIVERSIDE RAISED WITH DEFENDANTS THAT THE PURPORTED COVERAGE LIMITATION IS UNLAWFUL

37.     On September 3, 2019, Riverside billed Defendants for the services provided to Patient with total charges of $1,995,262.00, and expected to be paid pursuant to the Participating Facility Agreement with Multiplan, which for this case equals $1,636,114.84.

38.     In October 2019, Riverside learned from RCI that Defendants refused to pay the bill at the MultiPlan PPO network rate, due to the Plan's alleged $2,500 Annual Coverage Limit. Defendants' position was that they were only going to pay the $2,500 Annual Coverage Limit and nothing more.

39.     Riverside responded by informing Defendants that because the ACA bans lifetime and

---

[2] *See also* Frequently Asked Questions on Essential Health Benefits Bulletin, CMS, https://www.cms.gov/cciio/resources/files/downloads/ehb-faq-508.pdf ("Under the Affordable Care Act, self-insured group health plans, large group market health plans, and grandfathered health plans are not required to offer EHB. However, the prohibition in PHS Act section 2711 on imposing annual and lifetime dollar limits on EHB does apply to self-insured group health plans, large group market health plans, and grandfathered group market health plans. These plans are permitted to impose non-dollar limits, consistent with other guidance, on EHB as long as they comply with other applicable statutory provisions.").

annual coverage limits for EHBs offered by self-insured products, including the Plan, their attempt to enforce the $2,500 Annual Coverage Limit against Riverside was illegal under federal law.

40.     Immediately thereafter, the parties entered negotiations to reach a compromise on payment for Patient's care.

41.     In October 2019, MultiPlan faxed Riverside a draft compromise agreement for this case, dated October 24, 2019, in which MultiPlan represented it was acting as Apex Management Group's "contracted agent." MultiPlan, on Apex Management Group's behalf, offered to pay $987,366.00 as settlement in full for the bill for Patient's hospital stay. That figure was less than what would otherwise be owed to Riverside pursuant to the Multiplan PPO network rate.

42.     Riverside accepted Defendants' offer to pay $987,366.00 and faxed an executed copy of the Single Case Agreement back to Jammie Winsor with MultiPlan, as the Single Case Agreement instructed. Attached as **Exhibit A** is a true and correct copy of the signed Single Case Agreement (with patient health information redacted).

43.     On October 29, 2019, Riverside spoke with Ms. Winsor, a senior claims resolution specialist at MultiPlan. Ms. Winsor confirmed receipt of the signed Single Case Agreement and indicated that it had been approved for payment and would be paid in the near future.

44.     Over the next month, Riverside repeatedly contacted Ms. Winsor to check about payment status and to confirm payment was forthcoming. Ms. Winsor represented, among other things, that she would escalate the issue to upper management to have payment expedited.

45.     On December 11, 2019, MultiPlan informed Riverside that, despite entering into the Single Case Agreement, Defendants would only pay $2,500. On December 18, 2019, RCI issued payment to Riverside in the amount of $2,500.

46.     Time and time again, Riverside has requested that Defendants correct their significant underpayment, including in correspondence dated January 16, 2020, September 7, 2021, March 15, 2022, and November 10, 2023, to no avail.

47.     To date, Defendants have paid only $2,500 for Patient's month-long hospital stay in 2019. Defendants have never contested the medical necessity of the services provided to them for the Patient.

///

1

### COUNT I - BREACH OF WRITTEN CONTRACT

2

(Against MultiPlan and Apex Management Group)

3      48.     Riverside incorporates all allegations set forth above as though fully set forth herein.

4      49.     Riverside and MultiPlan are parties to the Participating Facility Agreement under which

5  MultiPlan has obligations to Riverside as described above.

6      50.     MultiPlan then negotiated and executed the Single Case Agreement on behalf of Apex

7  Management Group for a further discount on medical services that Riverside provided to Defendants for

8  Patient.

9      51.     Through the Single Case Agreement, Riverside agreed to accept payment from

10 Defendants at a discounted rate off the amount otherwise owed under the Participating Facility

11 Agreement for Patient's admission, in exchange for, among other things, the assurance that Defendants

12 would pay the amount agreed to.

13     52.     As described above, Defendants MultiPlan and Apex Management Group breached the

14 Single Case Agreement by failing to pay Riverside in accordance with the terms of the Single Case

15 Agreement.

16     53.     It is Riverside's understanding that Defendants base their breach on the $2,500 Annual

17 Coverage Limit, which is unlawful under federal law.

18     54.     Both Emergency services and Hospitalization are EHBs. 42 U.S.C. § 18022(b). Apex

19 Management Group voluntarily elected to provide coverage for these EHBs, as part of its MEC Premier

20 Plan. Accordingly, under federal law, Defendants could not implement the $2,500 Annual Coverage

21 Limit in the first instance and cannot now enforce it against Riverside. 42 U.S.C. § 300gg–11(a)(1).

22     55.     In addition, MultiPlan has breached the Participating Facility Agreement by failing to

23 "obligate [Apex Management Group/RCI] to comply with the terms of this Agreement, including but not

24 limited to the obligation to pay, or require [Apex Management Group/RCI] to pay for Covered Services

25 rendered to Participants" in accordance with the Participating Facility Agreement, as required under

26 Section 4.3, or in accordance with the terms of the separately negotiated Single Case Agreement.

27     56.     Section 4.13 of the Participating Facility Agreement further provides that "in the event of

28 a dispute between [Riverside] and Client, or any authorized agent acting on behalf of Client relating to

compliance with the term of this Agreement, MPI will act as a liaison and work in cooperation with [Riverside] and Client to resolve the matter of controversy. [MultiPlan's] obligations as a liaison under this Section 4.12 include but are not limited to: (a) response to [Riverside], complaints or issues within five (5) business days of [Riverside's] notice to [MultiPlan] of the same; and (b) facilitate communication between [Riverside], Client, User and/or agent within fifteen (15) days of request by [Riverside] [MultiPlan's] repeated and consistent failure to comply with this Section 4.13 shall constitute a breach of this Agreement."

57.     Riverside is informed and believes that MultiPlan failed to act as a liaison to resolve the dispute here. In fact, despite being included on the appeals and further correspondence with Apex Management Group and RCI about payment of the bill, Riverside is unaware of any involvement by MultiPlan to attempt to act as a liaison to resolve payment of the bill after it negotiated a further discount of the rates in the Participating Facility Agreement through the Single Case Agreement. Therefore, MultiPlan failed to comply with its obligations under Sections 4.3 and 4.13 of the Participating Facility Agreement, causing damages to Riverside in an amount to be proved at trial, of at least the principal owed under the Single Case Agreement for these services.

58.     MultiPlan's breaches of Section 4.3 and 4.13 have frustrated, excused, and estopped MultiPlan from arguing that it is not liable for Riverside's damages for nonpayment of the bill. The notion of Riverside looking solely to Apex Management Group or RCI is inexorably tied to MultiPlan complying with its above-stated obligations under the Participating Facility Agreement, and with California law, regarding MultiPlan taking the necessary steps for its network lessee's compliance with the Participating Facility Agreement and subsequent agreements negotiated by MultiPlan on behalf of its Clients.

59.     Riverside performed all the terms and conditions of the Participating Facility Agreement and Single Case Agreement except to the extent the actions, omissions, and inactions of Defendants have frustrated and excused such performance.

60.     As a direct and proximate result of MultiPlan and Apex Management Group's breach of the Single Case Agreement, and MultiPlan's breach of the Participating Facility Agreement, Riverside has been damaged by at least $984,866.00 under the Single Case Agreement, and if that agreement does

1  not apply, then by at least $1,636,114.84 under the Participating Facility Agreement.

2  **COUNT II - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

3  (Against MultiPlan)

4  61.     Riverside incorporates all allegations set forth above as though fully set forth herein.

5  62.     MultiPlan's failure to ensure that Clients pay for bills in accordance with the terms of the

6  Participating Facility Agreement or the subsequent Single Case Agreement, and conduct, or lack thereof,

7  as "liaison" to resolve disputes, breached the Participating Facility Agreement's implied covenant of

8  good faith and fair dealing.

9  63.     If MultiPlan contends payment of the bill was the sole responsibility of Apex Management

10  Group or RCI, who MultiPlan permitted to access Riverside's services using the Participating Facility

11  Agreement's discounted rates pursuant to Section 4.3 and 4.13 of the Participating Facility Agreement

12  and then subsequently acted on behalf of Apex Management Group to negotiate the Single Case

13  Agreement, then Riverside is informed and believes that MultiPlan took actions and/or omissions to

14  undercut the Participating Facility Agreement's requirement that MultiPlan (a) "will obligate the Client

15  to comply with the terms of this Agreement, including but not limited to the obligation to pay, or require

16  User to pay, for Covered Services rendered to Participants…" and (b) "act as a liaison and work in

17  cooperation with [Riverside] and Client to resolve the matter of controversy."

18  64.     Riverside is informed and believes that these actions and omissions by MultiPlan occurred

19  when MultiPlan handled lease contracting, claims pricing, claims processing, claims reviews, claims

20  payment, claims appeals, utilization management, medical management, and/or other administrative

21  services for Apex Management Group. MultiPlan performed these tasks in a manner that undercut

22  MultiPlan's contractual requirements that (a) Clients compensate Riverside in accordance with the

23  Participating Facility Agreement and (b) MultiPlan use reasonable efforts to facilitate Clients correct

24  compensation to Riverside for services provided in accordance with the Participating Facility Agreement.

25  65.     Riverside further alleges that MultiPlan breached its duty of good faith and fair dealing

26  when it sold access to its provider network, including access to Riverside's medical services, to entities

27  such as Apex Management Group, which Riverside is informed and believes offers health plans that do

28  not comply with the requirements of the ACA. As such, MultiPlan is offering access to Riverside's

medical services to entities that do not abide by the rates and terms set forth in the Participating Facility Agreement in violation of MultiPlan's obligations under the Participating Facility Agreement.

66.     MultiPlan's breaches of the implied covenant of good faith and fair dealing have deprived Riverside of the Participating Facility Agreement's benefits with regard to Clients and Users and undercut the related provisions of the Participating Facility Agreement addressing the status of Clients. The provision of the Participating Facility Agreement contemplating that Riverside would look to Clients for financial responsibility was premised directly and inexorably on the related provisions in the Participating Facility Agreement that MultiPlan would require Clients to compensate Riverside in accordance with the Participating Facility Agreement. The Participating Facility Agreement also presumed that MultiPlan would not sell access to Riverside's services to entities who offered illegal plans under the ACA.

67.     As a direct and proximate result of MultiPlan's breaches of the implied covenant of good faith and fair dealing, Riverside was not compensated in accordance with the provisions of the Participating Facility Agreement or the Single Case Agreement.

68.     Riverside has performed all the terms and conditions of the Participating Facility Agreement and the Single Case Agreement, except to the extent the actions, omissions, and inactions of MultiPlan have frustrated and excused such performance.

69.     Riverside has been damaged by MultiPlan's breaches of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

70.     Accordingly, MultiPlan now should be held liable for damages to Riverside, in an amount to be proven at trial.

## COUNT III - INTENTIONAL MISREPRESENTATION/OMISSION

### (Against MultiPlan and Apex Management Group)

71.     Riverside incorporates all allegations set forth above as though fully set forth herein.

72.     As alleged above, Defendants affirmatively represented to Riverside that they would pay $987,366.00 in compromise of Patient's bill, by entering into the Single Case Agreement. When agreeing to pay this amount, Defendants never stated that they would instead try to enforce the illegal $2,500 Annual Coverage Limit to reduce payment.

73.     At the times that these representations and concealments occurred, Defendants knew that

the representations that Defendants would pay $987,366.00 in compromise of Patient's bill were false. Defendants nonetheless made these representations knowing that they were false, and/or made recklessly and without regard for their truth.

74.     Defendants intended that Riverside rely on these representations and concealments.

75.     Riverside reasonably relied on Defendant's representations and expected that Defendants would pay $987,366.00 under the Single Case Agreement.

76.     At no point during the negotiations after Riverside explained to Defendants that the $2,500 Annual Coverage Limit violated federal law did Defendants say they would continue to attempt to impose this illegal coverage limitation on EHBs rather than comply with the Single Case Agreement that the parties were negotiating.

77.     Riverside was substantially harmed when Defendants chose to pay just 0.25% of the agreed amount.

78.     Accordingly, Riverside was damaged by at least $984,866.00, or in the alternative, $1,636,114.84, consistent with Defendants' promises to Riverside.

79.     Riverside is informed and believes that Defendants obtained the Single Case Agreement through fraud. The fact that (1) Riverside told Defendants the 2,500 Annual Coverage Limit was illegal before the parties negotiated the Single Case Agreement; (2)  Defendants then negotiated the Single Case Agreement to pay $984,866.00 for the services, and (3) Defendants still paid at the illegal 2,500 Annual Coverage Limit, indicate that Defendants had no intention to comply with the payment amount in the Single Case Agreement when they entered into it.  Therefore, Defendants also should have to pay punitive damages for their fraud.

## COUNT IV - NEGLIGENT MISREPRESENTATION/OMISSION

### (Against MultiPlan and Apex Management Group)

80.     Riverside incorporates all allegations set forth above as though fully set forth herein.

81.     As alleged above, Defendants affirmatively represented to Riverside that they would pay $987,366.00 in compromise of Patient's bill, by entering into the Single Case Agreement. When agreeing to pay this amount, Defendants never stated that they would instead try to enforce the illegal $2,500 Annual Coverage Limit to reduce payment.

82.     At the times that these representations and concealments occurred, Defendants had no reasonable basis to believe that they would comply with agreed upon payment amount in the Single Case Agreement.

83.     Defendants intended that Riverside rely on these representations and concealments.

84.     Riverside reasonably relied on Defendants' representations and expected that Defendants would pay $987,366.00 under the Single Case Agreement.

85.     At no point during the negotiations after Riverside explained to Defendants that the $2,500 Annual Coverage Limit violated federal law did Defendants say they would continue to attempt to impose this illegal coverage limitation on EHBs rather than comply with the Single Case Agreement that the parties were negotiating.

86.     Riverside was substantially harmed when Defendants chose to pay just 0.25% of the agreed amount.

87.     Accordingly, Riverside was damaged by at least $984,866.00, or in the alternative, $1,636,114.84, consistent with Defendants' promises to Riverside.

## **COUNT IV – INTENTIONAL INTERFERENCE WITH CONTRACT**

### (Against RCI)

88.     Riverside incorporates all allegations set forth above as though fully set forth herein.

89.     Riverside is informed and believes that RCI has acted "behind the scenes" to encourage and influence the other Defendants into refusing to pay Riverside in accordance with the terms of the Single Case Agreement, and/or the terms of the Participating Facility Agreement, including, but not limited to, seeking to use the illegal $2,500 Annual Coverage Limit as an excuse for violating the applicable contractual obligations.

90.     RCI knew that, given the care rendered by Riverside to Patient, Riverside had an economic relationship with the other Defendants in this case, which would have resulted in an economic benefit to Riverside. Specifically, Riverside is informed and believes that RCI knew that the other Defendants had entered into the Single Case Agreement, whereby they agreed to pay $987,366.00 in compromise of Patient's bill notwithstanding the $2,500 Annual Coverage Limit.  RCI also knew the Participating Facility Agreement's higher rates would have resulted in Defendants owing $1,636,114.84 were it not

for the Single Case Agreement.

91.     RCI intended to disrupt, and did disrupt, these agreements and relationships. Riverside is informed and believes that RCI is the TPA for most, if not all, of Apex Management Group's "skinny" health plans, which do not provide ACA-compliant coverage. Through this ongoing relationship, RCI has reason to know that the $2,500 Annual Coverage Limit is unlawful under federal law, and cannot be enforced against Riverside to reduce reimbursement under the Single Case Agreement or the Participating Facility Agreement.

92.     RCI has disrupted Riverside's relationship with the other Defendants in substantial ways. For instance, Riverside is informed and believes that RCI urged the other Defendants to apply the $2,500 Annual Coverage Limit to limit payment to Riverside, notwithstanding the terms of the Single Case Agreement or the Participating Facility Agreement. In addition, Riverside is informed and believes that RCI was responsible for processing payment on the account, and failed to remit $987,366.00 as required, but instead made sure that only $2,500 was paid to Riverside.

93.     Due to the ongoing nature of Apex Management Group's relationship with RCI, Riverside is informed and believes that RCI worked closely with Apex Management Group and/or MultiPlan to ensure that the illegal $2,500 Annual Coverage Limit was enforced, and that RCI and Apex Management Group were in frequent communication regarding Defendants' failure to properly pay Riverside. Riverside also suspects that RCI benefits financially when it causes the other Defendants not to honor the contractual obligations and instead use illegal caps on EHBs.

94.      As a direct and proximate result of RCI's interference, Riverside has been damaged in an amount to be proven at trial, due to the extensive efforts that it has been forced to pursue in order to obtain the correct compensation for Patient's admission – including significant legal costs, such as attorneys' fees, that Riverside has incurred and will incur to pursue the payment owed under the Single Case Agreement and/or the Participating Facility Agreement.

95.     Riverside further seeks punitive damages against RCI for its fraudulent behavior.

### COUNT V – NEGLIGENT INTERFERENCE WITH CONTRACT

(Against RCI)

96.     Riverside incorporates all allegations set forth above as though fully set forth herein.

97.     Riverside is informed and believes that RCI has acted "behind the scenes" to encourage and influence the other Defendants into refusing to pay Riverside in accordance with the terms of the Single Case Agreement, and/or the terms of the Participating Facility Agreement, including, but not limited to, seeking to use the illegal $2,500 Annual Coverage Limit as an excuse for violating the applicable contractual obligations.

98.     RCI knew or should have known that given the care rendered by Riverside to Defendants for Patient, Riverside had an economic relationship with the other Defendants in this case, which would have resulted in an economic benefit to Riverside. Specifically, Riverside is informed and believes that RCI knew that the other Defendants had entered into the Single Case Agreement, whereby they agreed to pay $987,366.00 in compromise of Patient's bill notwithstanding the $2,500 Annual Coverage Limit. RCI also knew the Participating Facility Agreement's higher rates would have resulted in Defendants owing $1,636,114.84 were it not for the Single Case Agreement.

99.     RCI knew or should have known that Riverside's economic relationship would be disrupted if RCI failed to act with reasonable care with respect to payment and processing of Patient's account.

100.     RCI failed to act with reasonable care when it interfered with Defendants' performance under the Participating Facility Agreement and Single Case Agreement.

101.     RCI intended to disrupt, and did disrupt, these agreements and relationships. Riverside is informed and believes that RCI is the TPA for most, if not all, of Apex Management Group's "skinny" health plans, which do not provide ACA-compliant coverage. Through this ongoing relationship, RCI has reason to know that the $2,500 Annual Coverage Limit is unlawful under federal law, and cannot be enforced against Riverside to reduce reimbursement under the Single Case Agreement or the Participating Facility Agreement.

102.     RCI has disrupted Riverside's relationship with the other Defendants in substantial ways. For instance, Riverside is informed and believes that RCI urged the other Defendants to apply the $2,500 Annual Coverage Limit to limit payment to Riverside, notwithstanding the terms of the Single Case Agreement or the Participating Facility Agreement. In addition, Riverside is informed and believes that RCI was responsible for processing payment on the account, and failed to remit $987,366.00 as required,

16

but instead made sure that only $2,500 was paid to Riverside.

103.    Due to the ongoing nature of Apex Management Group's relationship with RCI, Riverside is informed and believes that RCI worked closely with Apex Management Group and/or MultiPlan to ensure that the illegal $2,500 Annual Coverage Limit was enforced, and that RCI and Apex Management Group were in frequent communication regarding Defendants' failure to properly pay Riverside. Riverside also suspects that RCI benefits financially when it causes the other Defendants not to honor the contractual obligations and instead use illegal caps on EHBs.

104.    As a direct and proximate result of RCI's interference, Riverside has been damaged in an amount to be proven at trial, due to the extensive efforts that it has been forced to pursue in order to obtain the correct compensation for Patient's stay – including significant legal costs, such as attorneys' fees, that Riverside has incurred and will incur to pursue the payment owed under the Single Case Agreement and/or the Participating Facility Agreement.

## COUNT VI - DECLARATORY RELIEF

### (Against All Defendants)

105.    Riverside incorporates all allegations set forth above as though fully set forth herein.

106.    A present and actual controversy exist between the parties as to whether Defendants may rely on the illegal $2,500 Annual Coverage Limit to limit reimbursement owed to Riverside of $984,866.00 pursuant to the express terms of the Single Case Agreement and/or $1,636,114.84 pursuant to the Participating Facility Agreement. Riverside contends that Defendants' reliance on the $2,500 Annual Coverage Limit to reduce payment violates federal law. Riverside suspects that Defendants will contend that their reliance on the illegal $2,500 Annual Coverage Limit is appropriate and complies with such laws.

107.    Accordingly, Riverside seeks declaratory relief so that it and Defendants can know and understand how Defendants should have performed and need to perform going forward. This includes, without limitation, whether Defendants' reliance on the $2,500 Annual Coverage Limit was proper, or whether Defendants owe further payment under the Single Case Agreement at $984,866.00, and/or owes further payment under the Participating Facility Agreement at $1,636,114.84.

## **PRAYER FOR RELIEF**

Wherefore, Riverside prays for judgment against Defendants and Does 1 through 10 as follows:

1.      For compensatory damages in an amount to be proven at trial;

2.      For punitive damages on the fraud causes of action;

3.      For declaratory relief as set forth above in the declaratory relief cause of action and as otherwise deemed appropriate;

4.      For any and all such other relief deemed just and appropriate, to the full extent available under any and all applicable laws and rules.

## **DEMAND FOR JURY TRIAL**

Riverside demands a jury trial on all causes of action.


Dated:  December 8, 2023          KING & SPALDING LLP

                                                          By:

                                                          _____
                                                          GLENN E. SOLOMON
                                                          AMY L. O'NEILL
                                                          ELIZABETH KEY
                                                          *Attorneys for Plaintiff*

# Exhibit A

 **MultiPlan.**

**Fax Transmission**

**AGREEMENT**

TO: KENDALL YORK
Kendall.york@hcahealthcare.com
From #:817-436-6049 /Jammie Winsor

**DATE:** October 24, 2019
**DOB:** REDACTED

| | |
|---|---|
| **PATIENT:** REDACTED | **Multiplan Claim #:** 191023186081 |
| **Date of Service:** REDACTED | **Payor:** Analytic Alternative dba APEX Mgmt Group |

**Analytic Alternative dba APEX Mgmt Group** as contracted with **MultiPlan** to facilitate resolution of the above referenced services for this claim. This agreement may expedite claim adjudication and decrease the Patient's responsibility.

Riverside Community Hospital Medical Center **agrees to accept the Proposed Amount listed below as payment in full (less any applicable deductible, co-insurance, or co-payment amounts in addition to non-covered items) for services rendered to this Patient on the following date(s):**

| **Date of Service** | **Billed Charges** | **Proposed Amount** |
|---|---|---|
| REDACTED | $1,995,262.00 | $987,366.00 ✓ |

By signing this agreement, Provider accepts this Proposed Amount and agrees to reduce the liability of the Patient and Payor. Provider agrees not to bill the Patient (or financially responsible party) for the difference between the Billed Charges and the Proposed Amount. Provider retains the right to bill the Patient (or financially responsible party) for items not covered under the Patient's benefit plan and for any applicable deductibles, co-insurance, or co-payments. Provider shall not waive any such patient responsibility amounts due directly from the patient (or other financially responsible party).

MultiPlan is not a payor and is not financially responsible for any payments due to the Provider. Payment of benefits, if any, is subject to the terms and conditions of the Patient's benefit plan. This letter of agreement does not constitute, nor should it be construed as, a guarantee of benefit payment by the Payor. Please feel free to contact us if you have any questions or concerns.

**Please sign below and fax back promptly to: 630-799-3524   If you have questions please immediately contact Jammie Winsor at 817-436-6049**

The signatory to this agreement represents and warrants that he/she is signing on behalf of Provider and is fully authorized to sign and commit Provider to all of its obligations and responsibilities under this agreement.

Please mail payment to:
Riverside Community Hospital
P.O. Box 409178
Atlanta, GA  30384-9178

October 24, 2019

_____
Authorized Representative's Signature

_____
Date

Brian C. Nelson
Print Name

Senior Counsel
Title

NOTICE OF CONFIDENTIALITY: Information included in and/or attached to this fax transmission may be confidential. This fax transmission is intended for the addressee(s) only. Any unauthorized disclosure, reproduction, or distribution of and /or any unauthorized action taken in reliance on the information in this fax is prohibited. If you believe that you receive this fax transmission in error, please notify the sender by reply transmission and destroy the fax without copying or disclosing it. Multiplan may also need to contact you for additional information as required by HIPAA or state law.

Claim 7082--Exhibit "A"

**To: Jammie Winsor**
Company:
Fax: 630-799-3524
Phone: MultiPlan

**From: Buffaloe John**
Company: Pas - Nashville West
Fax: (615) 886-4399
Phone: (615) 886-4398
Email: John.Buffaloe@Parallon.com

Sent: 10/24/2019 3:59:09 PM
Duration: 00:03:25
Number dialed: 916307993524
Remote ID: Fax Server
Result: Success
Pages: 2



# FAX

**To: Jammie Winsor**
Company:
Fax: 630-799-3524
Phone: MultiPlan

**From: Buffaloe John**
Fax: (615) 886-4399
Phone: (615) 886-4398
E-mail: John.Buffaloe@Parallon.com

**NOTES:**

Signed reduction request agreement for REDACTED Multiplan claim #191023186081.

**Date and time of transmission:** Thursday, October 24, 2019 3:58:58 PM
**Number of pages including this cover sheet:** 02

Confirmation receipt generated by NOZ6841 on 10/24/2019 4:04:38 PM.

Claim 7082--Exhibit "B"

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| GLENN E. SOLOMON (SBN 155674)<br>**KING & SPALDING LLP**<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071<br>TELEPHONE NO.: (213) 443-4355    FAX NO. *(Optional):* (213) 443-4310<br>E–MAIL ADDRESS *(Optional):* gsolomon@kslaw.com<br>ATTORNEY FOR *(Name):* Plaintiff Riverside Community Hospital | *Electronically FILED by Superior Court of California, County of Riverside on 01/04/2024 10:31 AM*<br>*Case Number CVRI2306599 0000080022203 - Jason B. Galkin, Executive Officer/Clerk of the Court By Janelle Blackwell, Clerk* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: SAME AS ABOVE
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME:

| PLAINTIFF/PETITIONER: RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL<br>DEFENDANT/RESPONDENT: APEX MANAGEMENT GROUP I, INC., etc., et al. | CASE NUMBER:<br>**CVRI2306599** |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>KINSP-0176719.SL |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) - Information package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ Other *(specify documents):* **NOTICE OF CASE MANAGEMENT CONFERENCE; NOTICE OF DEPARTMENT ASSIGNMENT**

3. a. Party served *(specify name of party as shown on documents served)*:
   **REGIONAL CARE, INC., a Nebraska corporation**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **NURITSA MARTINYAN, AGENT FOR SERVICE OF PROCESS**

4. Address where the party was served: **905 WEST 27th STREET, SCOTTSBLUFF, NE 69361**

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*    (2) at *(time):*
   b. ☑ **by substituted service.** On *(date):* **12/13/2023**  at *(time):* **4:10 PM** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
   **ALLISON CLOSSON, LEGAL DEPARTMENT**
   
   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   
   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   
   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   
   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ.Proc., § 415.20). I mailed the documents on *(date):*    from *(city):*    **or** ☑ a declaration of mailing is attached.
   
   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: APEX MANAGEMENT GROUP I, INC., etc., et al. | CVRI2306599 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:            (2) from *(city)*:

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt)*. (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested.   (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify)*:
  c. ☐ as occupant.
  d. ☑ On behalf of *(specify)*:   **REGIONAL CARE, INC., a Nebraska corporation**
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a.  Name:  **ALAN GUSTAFSON (Nebraska State Process Server)**
  b.  Address:  PO Box 861057, Los Angeles, California 90086
  c.  Telephone number:  (213) 975-9850
  d.  **The fee** for service was: $ 275.00
  e.  I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section  22350(b).
    (3) ☐ registered California process server:
      (i)  ☐ owner  ☐ employee  ☑ independent contractor.
      (ii)  Registration No.:
      (iii)  County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  12/21/2023

**ALAN GUSTAFSON**
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address) | | | FOR COURT USE ONLY |
|---|---|---|---|
| GLENN E. SOLOMON (SBN 155674)  (213) 443-4355 KING & SPALDING LLP 633 West Fifth Street, Suite 1600 Los Angeles, CA 90071 <br><br> Attorney(s) for: Plaintiff Riverside Community Hospital <br> Ref: KINSP-0176719.SL | | | |
| SUPERIOR COURT FOR THE STATE OF CALIFORNIA FOR THE COUNTY OF RIVERSIDE                      , | | | |
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL vs.  APEX MANAGEMENT GROUP I, INC., etc, et al. | | | |
| **PROOF OF MAILING** | DATE: | TIME: | DEPT | CASE NUMBER: **CVRI2306599** |

**At the time of mailing, I was at least 18 years old and not a party to the action**

1. I mailed the following documents:
   SUMMONS; COMPLAINT; ALTERNATIVE DISPUTE RESOLUTION (ADR) - INFORMATION PACKAGE; CIVIL CASE COVER SHEET; NOTICE OF CASE MANAGEMENT CONFERENCE; NOTICE OF DEPARTMENT ASSIGNMENT

2. (a) Addressed as follows:

   REGIONAL CARE, INC., a Nebraska corporation

   905 WEST 27th STREET

   SCOTTSBLUFF, NE 69361

   (b) ☒ Business    ☐ Residence    ☐ Other

3. On: 12/15/2023

4. Place:  Los Angeles, California

5. Type of mailing:  First Class

6. Person mailing:
   JESSE VILLALTA
   EXPRESS  NETWORK
   P.O. BOX 861057
   LOS ANGELES, CALIFORNIA 90086
   (213) 975-9850

7. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/14/2023                                         _Jesse Villalta_

PROOF OF MAILING

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| GLENN E. SOLOMON (SBN 155674)<br>**KING & SPALDING LLP**<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071<br>TELEPHONE NO.: (213) 443-4355    FAX NO. *(Optional):* (213) 443-4310<br>E–MAIL ADDRESS *(Optional):* gsolomon@kslaw.com<br>ATTORNEY FOR *(Name):* Plaintiff Riverside Community Hospital | Electronically FILED by Superior Court of California, County of Riverside on 01/04/2024 10:31 AM<br>Case Number CVRI2306599 0000080022204 - Jason B. Galkin, Executive Officer/Clerk of the Court By Janelle Blackwell, Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

STREET ADDRESS:   4050 Main Street
MAILING ADDRESS:  SAME AS ABOVE
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME:

| PLAINTIFF/PETITIONER: RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL<br>DEFENDANT/RESPONDENT: APEX MANAGEMENT GROUP I, INC., etc., et al. | CASE NUMBER:<br>**CVRI2306599** |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>KINSP-0176717.SL |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) - Information package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ Other *(specify documents):* CERTIFICATE OF COUNSEL; NOTICE OF CASE MANAGEMENT CONFERENCE; NOTICE OF DEPARTMENT ASSIGNMENT
3. a. Party served *(specify name of party as shown on documents served):*
      ANALYTIC ALTERNATIVE, LLC., dba APEX MANAGEMENT GROUP, an Illinois corporation

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      CHRIS STEPUSZEK, PERSON AUTHORIZED TO ACCEPT SERVICE OF PROCESS
4. Address where the party was served: 6425 CLARENDON HILLS ROAD, #116, WILLOWBROOK, IL 60527
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **12/20/2023** (2) at *(time):* **7:18 PM**
   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ.Proc., § 415.20). I mailed the documents on *(date):* from *(city):* **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: APEX MANAGEMENT GROUP I, INC., etc., et al. | **CVRI2306599** |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date)*: (2) from *(city)*:

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt)*. (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify)*:

c. ☐ as occupant.

d. ☑ On behalf of *(specify)*: ANALYTIC ALTERNATIVE, LLC., dba APEX MANAGEMENT GROUP, an Illinois corporation under the following Code of Civil Procedure section:

☐ 416.10 (corporation) ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation) ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership) ☐ 416.90 (authorized person)
☐ 416.50 (public entity) ☐ 415.46 (occupant)
☐ other:

7. **Person who served papers**

a. Name: MARK GRENA (Illinois State Process Server)

b. Address: PO Box 861057, Los Angeles, California 90086

c. Telephone number: (213) 975-9850

d. **The fee** for service was: $ 275.00

e. I am:

(1) ☑ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☐ registered California process server:

(i) ☐ owner ☐ employee ☐ independent contractor.

(ii) Registration No.:

(iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/21/2023

MARK GRENA                                                     ▶

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                    (SIGNATURE )

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| GLENN E. SOLOMON (SBN 155674) **KING & SPALDING LLP** 633 West Fifth Street, Suite 1600 Los Angeles, CA 90071 TELEPHONE NO.: (213) 443-4355      FAX NO. *(Optional):* (213) 443-4310 E–MAIL ADDRESS *(Optional):* gsolomon@kslaw.com ATTORNEY FOR *(Name):* Plaintiff Riverside Community Hospital | Electronically FILED by Superior Court of California, County of Riverside on 01/04/2024 10:31 AM Case Number CVRI2306599 0000080022205 - Jason B. Galkin, Executive Officer/Clerk of the Court By Janelle Blackwell, Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**
STREET ADDRESS:   4050 MAIN STREET
MAILING ADDRESS:   SAME AS ABOVE
CITY AND ZIP CODE:   RIVERSIDE, CA 92501
BRANCH NAME:

| PLAINTIFF/PETITIONER:   RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   APEX MANAGEMENT GROUP I, INC., et al. | **CVRI2306599** |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: KINSP-0176716.SL |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) - Informtion package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ Other *(specify documents):* CERTIFICATE OF COUNSEL; NOTICE OF CASE MANAGEMENT CONFERENCE; NOTICE OF DEPARTMENT ASSIGNMENT
3. a. Party served *(specify name of party as shown on documents served):*
   APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   CHRIS STEPUSZEK, PERSON AUTHORIZED TO ACCEPT SERVICE OF PROCESS
4. Address where the party was served: 1417 49th CT S, WESTERN SPRINGS, IL 60558
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* **12/20/2023**      (2) at *(time):* **7:18 PM**
   b. ☐ **by substituted service.** On *(date):*           at *(time):*           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ.Proc., § 415.20). I mailed the documents on *(date):*           from *(city):*           **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: APEX MANAGEMENT GROUP I, INC., et al. | **CVRI2306599** |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt).* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)              ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association).   ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)              ☐ 415.46 (occupant)

                                  ☐ other:

7. **Person who served papers**

a. Name: MARK GRENA (Illinios State Process Server)

b. Address: PO Box 861057, Los Angeles, California 90086

c. Telephone number: (213) 975-9850

d. **The fee** for service was: $ 275.00

e. I am:

    (1) ☑ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ registered California process server:

        (i) ☐ owner ☐ employee ☐ independent contractor.

        (ii) Registration No.:

        (iii) County:

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/21/2023

                              ▶        *Mark Grena*

      MARK GRENA

    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                  (SIGNATURE )

Electronically FILED by Superior Court of California, County of Riverside on 01/04/2024 11:52 AM
Case Number CVRI2306599 0000080046648 - Jason B. Galkin, Executive Officer/Clerk of the Court By Olga Ramirez-Chavez, Clerk

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO: 294458<br>NAME: Amy O'Neill<br>FIRM NAME: King & Spalding LLP<br>STREET ADDRESS: 621 Capitol Mall, Suite 1500<br>CITY: Sacramento        STATE: CA    ZIP CODE: 95814<br>TELEPHONE NO.: (916) 321-4812    FAX NO.: (916) 321-4900<br>E-MAIL ADDRESS: aoneill@kslaw.com<br>ATTORNEY FOR (Name): Riverside Healthcare System, L.P. dba Riverside Community Hospital | FOR COURT USE ONLY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE<br>STREET ADDRESS: 4050 Main Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:    Riverside 92501<br>BRANCH NAME:  Riverside Historic Courthouse |

| |
|---|
| Plaintiff/Petitioner:  Riverside Healthcare System, L.P. dba Riverside Community H...<br>Defendant/Respondent:  Apex Management Group I, et al. |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CVRI2306599 |

TO *(insert name of party being served):* Multiplan, Inc.

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:  January 3, 2024

_____           ▶ _____
Kendra Ford
(TYPE OR PRINT NAME)                              (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [x]  A copy of the summons and of the complaint.
2. [x]  Other *(specify):*

    Certificate of Counsel, Civil Case Cover Sheet, ADR Packet, Notice of Case Management Conference, Notice of Department Assignment

*(To be completed by recipient):*

Date this form is signed:  1/4/24

Taylor Crousillac -Phelps Dunbar - Multiplan, Inc.     ▶ _____ - attorney
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

Electronically FILED by Superior Court of California, County of Riverside on 01/29/2024 06:34 PM
Case Number CVRI2306599 0000082321565 - Jason B. Galkin, Executive Officer/Clerk of the Court By Elizabeth Castaneda, Clerk

1

**FREEMAN MATHIS & GARY, LLP**
Jason W. Suh (State Bar No. 256573)
Jason.Suh@fmglaw.com
Samuel C. Jeon (State Bar No. 324043)
Samuel.Jeon@fmglaw.com
550 South Hope Street, 22nd Floor
Los Angeles, California 90071
Tel.: (213) 615-7000
Fax: (833) 264-2083

*Attorneys for Defendant*
REGIONAL CARE, INC.

2

3

4

5

6

7

8

9

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE – HISTORIC COURTHOUSE

10

11

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL, | Case No. CVRI2306599<br>Assigned to: Honorable Daniel Ottolia<br>Dept. 4 |
| Plaintiff, | |
| v. | **DEFENDANT REGIONAL CARE, INC.'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S UNVERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive, | *[Filed and served concurrently with (1) Declaration of Samuel C. Jeon, and (2)[Proposed] Order]* |
| Defendants. | Date: April 4, 2024<br>Time: 8:30 a.m.<br>Dept.: 4 |
| | **RESERVATION ID/NO.** 753075687379 |
| | Complaint Filed: December 8, 2023<br>Trial Date:         Not Yet Scheduled |

12

13

14

15

16

17

18

19

20

21

22

23

24

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE**

25

**ATTORNEYS OF RECORD**

26

**PLEASE TAKE NOTICE** that on April 4, 2024, at 8:30 a.m., or as soon thereafter as this

27

matter may be heard, in Department 4 of the above-entitled Court, located at 4050 Main Street,

28

Riverside, CA 92501, Defendant REGIONAL CARE, INC. ("**RCI**") will and hereby does demur to

1

the Complaint filed by Plaintiff RIVERSIDE HEALTHCARE SYSTEM, L.P. dba RIVERSIDE COMMUNITY HOSPITAL ("**Plaintiff**").

This Demurrer is made pursuant to California Code of Civil Procedure Section 430.10(e), and, in particular, to the following causes of action contained in the Plaintiff's Complaint: (i) the Fifth Cause of Action for Intentional Interference With Contract; and (ii) the Sixth Cause of Action for Negligent Interference with Contract.   This Motion is made on the grounds that Plaintiff has failed to allege sufficient facts in support of the aforementioned causes of action against RCI.

Pursuant to Code of Civil Procedure section 430.41, RCI's counsel attempted to meet and confer with Plaintiff's counsel to resolve the issues raised in this demurrer, but Plaintiff was unwilling to dismiss or further amend its Complaint, thereby necessitating this Demurrer.  (*See* Declaration of Samuel C. Jeon, ¶ 3-5.)

This Demurrer is based upon this Notice of Demurrer, the accompanying Memorandum of Points and Authorities, the declaration of Samuel C. Jeon filed concurrently herein, all pleadings and papers on file herein, and any such evidence and arguments as the Court may allow at the hearing on this matter.

Respectfully submitted,

Dated: January 29, 2024          **FREEMAN MATHIS & GARY, LLP**

By: _____
Jason W. Suh
Samuel C. Jeon
*Attorneys for Defendant*
REGIONAL CARE, INC.

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

## DEMURRER TO PLAINTIFF'S COMPLAINT

Defendant REGIONAL CARE, INC. ("**RCI**") hereby does demur to the Complaint filed by Plaintiff RIVERSIDE HEALTHCARE SYSTEM, L.P. d/b/a RIVERSIDE COMMUNITY HOSPITAL ("**Plaintiff**") on the following grounds:

## DEMURRER TO FIFTH CAUSE OF ACTION

### (Intentional Interference With Contract)

1.    The Complaint does not state facts sufficient to constitute a cause of action. (Cal. Civ. Code Proc. §430.10(e).)

## DEMURRER TO SIXTH CAUSE OF ACTION

### (Negligent Interference With Contract)

1.    The Complaint does not state facts sufficient to constitute a cause of action. (Cal. Civ. Code Proc. §430.10(e).)

Respectfully submitted,

Dated: January 29, 2024                    **FREEMAN MATHIS & GARY, LLP**

By: _____
Jason W. Suh
Samuel C. Jeon
*Attorneys for Defendant*
REGIONAL CARE, INC.

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Riverside Healthcare System, L.P. d/b/a Riverside Community Hospital ("**Plaintiff**") wrongfully seeks to recover damages against Defendant Regional Care Inc. ("**RCI**"), a third-party administrator, after Plaintiff provided medical care (allegedly in excess of $1.9 million dollars) to a motorcyclist critically injured by a high-speed rear-end collision. (Complaint, ¶ 1.)  From the four corners of the Complaint, it is clear that Plaintiff's primary dispute lies squarely with co-defendants Multiplan, Inc. ("**Multiplan**") and Analytic Alternative, LLC d/b/a Apex Management Group ("**Analytic Alternative**"), and not with RCI.

This is because Plaintiff readily admits that Plaintiff entered into "a written one-time single case agreement" with Multiplan and Analytic Alternative (**and not with RCI**), in which Plaintiff agreed to accept from Multiplan/ Analytic Alternative a discount of the total medical bill, or $987,366 – i.e., 50% off. (Complaint, ¶ 2.)  Multiplan and Analytic Alternative, however, allegedly paid $2,500 because the motorcyclist's insurance policy only covered inpatient and outpatient services up to a maximum of $2,500 per calendar year.  (Complaint, ¶ 3.)

Here, RCI did not enter into a "written one-time single case agreement" with Plaintiff.  In fact, there are no such allegations in the operative complaint. Any agreement to pay a discounted amount was strictly between Plaintiff, on the one hand, and Multiplan/ Analytic Alternative, on the other hand.  (Complaint, ¶ 2.)  RCI is neither an insurance carrier nor a health network provider, which is responsible for arranging, managing, and offering Preferred Provider Organization ("**PPO**") plans.  It is merely a third-party administrator that provides operational services, such as processing and reporting components of health benefit plans.

Without asserting any sufficient facts, Plaintiff broadly alleges that RCI engaged in both intentional and negligent interference with the purported contractual agreement between Plaintiff, on the one hand, and Multiplan/ Analytic Alternative, on the other hand.  (Complaint ¶¶ 90 and 98.) This is nothing more than unfounded conjecture, at best.  Accordingly, this Court should sustain RCI's Demurrer in its entirety without leave to amend.  It should be noted that RCI has also concurrently

///

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

filed its Motion to Strike, along with this Demurrer, requesting the Court to strike out Plaintiff's unjustified request for attorneys' fees and punitive damages against RCI.

## II.  PLAINTIFF'S UNVERIFIED ALLEGATIONS

In August 2019, a patient was treated at Plaintiff's Emergency Department after being involved in a high-speed motorcycle accident.  (Complaint, ¶34). Plaintiff later learned that said patient had a health insurance plan that provided access to Mutliplan's PPO network of healthcare providers.  (*Id.*)  Plaintiff further learned that said patient was insured by a MEC Premier Plan offered by Analytic Alternative and/or Apex Management Group (herein collectively "**Apex Management Group**") through said patient's employer.  (Complaint, ¶¶ 11 and 36.)

Plaintiff claims that it provided medically necessary services to said patient.  (Complaint, ¶35.) In turn, Plaintiff billed Multiplan and Apex Management Group $1,995,262.00, pursuant to Plaintiffs' Participating Facility Agreement with Multiplan, and expected to be paid approximately $1,636,114.84. (Complaint, ¶37.)  Multiplan and Apex Management Group, however, refused to pay $1,636,114.84 because said patient allegedly had an annual coverage limit of $2,500.  (Complaint, ¶38.)

Negotiations between Plaintiff, on the one hand, and Multiplan/ Analytic Alternative, on the other hand, led to a $987,366.00 settlement offer from MultiPlan in October 2019, wherein Multiplan and Analytic Alternative entered into a "written one-time single case agreement" with Plaintiff. (Complaint, ¶¶ 2 and 41.)  As a result, Plaintiff agreed to accept the $987,366.00 settlement offer. (Complaint, ¶¶ 2 and 42.) Nevertheless, only $2,500 was paid to Plaintiff. (Complaint, ¶45.) Plaintiff now alleges, without any basis, that RCI somehow influenced Multiplan/ Analytic Alternative to refuse payment of $987,366.00. (Complaint, ¶89.)

## III.  LEGAL ARGUMENT

Code of Civil Procedure section 430.10(e) provides that a general demurrer is appropriate in those instances where "[t]he pleading does not state facts sufficient to constitute a cause of action." Such a demurrer lies where the operative pleading fails to allege necessary ultimate facts required to state a cause of action, as well as where the pleading includes allegations that clearly disclose a defense or bar to recovery. (*Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152)

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

1   While it is true that a demurrer admits all material facts that are properly pled, California

2   courts have consistently held that "conclusions of law or fact alleged are not considered in judging its

3   sufficiency."  (*C&H Food Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062.)  The court

4   has discretion to sustain a demurrer without leave to amend if it appears from the complaint that under

5   applicable substantive law there is no reasonable possibility that an amendment can cure the defect.

6   (*Dalton v. East Bay Mun. Utility Dist.* (1993) 18 Cal.Ap$^{p.}$4th 1566, 1570-1571.) Moreover, where the

7   only issues are legal, and the Court decides against the complainant as a matter of law, leave to amend

8   should be denied.  (*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436.)

9   **A.    Intentional And Negligent Interference With Contract**

10   The elements necessary to state a cause of action for intentional interference with contractual

11   relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

12   contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

13   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

14   (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594.)

15   Meanwhile, the elements of negligent interference with contract or prospective economic

16   advantage are: (1) the existence of a valid contractual relationship or other economic relationship

17   between the plaintiff and a third party containing the probability of future economic benefit to the

18   plaintiff; (2) the defendant's knowledge, actual or construed, of the relationship; (3) the defendant's

19   knowledge, actual or construed, that the relationship would be disrupted if the defendant failed to act

20   with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of

21   the relationship; and (6) resulting economic harm. (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th

22   827.)

23   In *Mintz*, the defendant Blue Cross of California was the third-party administrator under a

24   health insurance plan that denied coverage to the plaintiff David Mintz for a treatment it deemed

25   questionable. The health insurance plan was issued and funded by CalPERS and the defendant Blue

26   Cross of California was the third-party administrator for CalPERS. The plan allowed plaintiff Mintz

27   to request an independent review of denial of coverage for an experimental therapy (as required by

28   statute); however, Blue Cross of California advised Mintz of his general appeal rights, but not of his

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S UNVERIFIED COMPLAINT

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

1   right to an independent review. Consequently, Mintz sued Blue Cross of California (but not the

2   insurer), alleging causes of action for **both intentional and negligent interference with contract**

3   **rights**, reckless infliction of emotional distress, and negligence, among others.

4          The trial court sustained Defendant Blue Cross of California's demurrers to the Mintz's

5   Second Amended Complaint, and Mintz appealed. **The Court of Appeal held that (1) defendant**

6   **Blue Cross of California, as the representative or agent of a contracting party (CalPers), may**

7   **not be held liable for the tort of interfering with its principal's contract**. (*Mintz v. Blue Cross of*

8   *California* (2009) 172 Cal.App.4th 1594.1604-1606.)

9          Here, just as in *Mintz*, RCI allegedly acted as an agent of Apex Management Group, since it

10  was the third party administrator "for most, if not all, of Apex Management Group's 'skinny' health

11  plans." (Complaint, ¶ 91.) In *Mintz*, Blue Cross of California was determined to be the representative

12  or agent of the contracting party (CalPERS) and thus it was not liable for torts like interfering (either

13  intentionally or negligently) with its principal's contract.

14         Similarly, RCI also would not be liable for intentionally (or negligently) interfering with

15  Plaintiff's contract, based on controlling California case law.  Plaintiff's Complaint concedes that

16  RCI is a "a TPA of healthcare benefits" and RCI acted as the "TPA of the health benefit plan at issue

17  here." (Complaint, ¶13.)."

18         Put simply, as alleged in the Complaint, RCI was the third-party administrator for Apex

19  Management Group (i.e., an agent of Apex Management Group). Accordingly, RCI cannot be held

20  liable for inducing a breach of Apex Management Group's purported contract with Plaintiff. (See

21  *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1604.) Moreover, under the agent's

22  immunity rule, a duly acting agent cannot be held liable for conspiring with their own principals,

23  because ordinarily corporate agents acting for or on behalf of the corporation cannot be held liable

24  for inducing a breach of the corporation's contract (*Mintz v. Blue Cross of California* (2009) 172

25  Cal.App.4th 1594.1605-1606.)

26         Based on above, Plaintiff's fifth cause of action for intentional interference with contract and

27  sixth cause of action for negligent interference with contract should be sustained without leave to

28  amend.

## IV.   **DEFENDANT HAS MET AND CONFERRED**

On January 24, 2024, Samuel C. Jeon, counsel for RCI, sent a detailed meet and confer letter to Plaintiff's counsel explaining the deficiencies in Plaintiff's Complaint. (Jeon Decl.; ¶3.) On January 26, 2024, RCI and Plaintiff's counsel telephonically met and conferred. (Jeon Decl.; ¶4.) Defendant's counsel attempted, in good faith, to meet and confer with Plaintiff's counsel to resolve the issues raised in this demurrer, but Plaintiff was unwilling to dismiss or amend its Complaint, thereby necessitating this Demurrer. (Jeon Decl.; ¶5.)

## V.   **CONCLUSION**

For the foregoing reasons, Defendant REGIONAL CARE, INC. respectfully requests this Court sustain the Demurrer in its entirety, without leave to amend.

Respectfully submitted,

Dated: January 29, 2024                 **FREEMAN MATHIS & GARY, LLP**

By: _____
Jason W. Suh
Samuel C. Jeon
*Attorneys for Defendant*
REGIONAL CARE, INC.

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S UNVERIFIED COMPLAINT

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

Case No. CVRI2306599

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action. My business address is 550 South Hope Street, 22nd floor, Los Angeles, California 90071; jackie.struck@fmglaw.com.

      On the date indicated below, I served the following document(s) described as **DEFENDANT REGIONAL CARE, INC.'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

☐    BY U.S. MAIL. I caused a true and correct copy of the foregoing document, enclosed in a sealed envelope and addressed as indicated on the Service List, to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    BY PERSONAL SERVICE. I caused a true and correct copy of the foregoing document to be delivered by hand via messenger service to the addresses indicated on the Service List.

☒    BY ELECTRONIC SERVICE.  I caused a true and correct copy of the foregoing document to be delivered, via electronic transmission or electronic notification through a designated electronic filing service provider, to the email addresses indicated on the Service List.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on January 29, 2024, at Los Angeles, California.

*Jackie Struck*
Jackie Struck

---

9

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S UNVERIFIED COMPLAINT

1
2
3

**SERVICE LIST**

*Riverside Healthcare System, L.P. v. Apex Management Group I, Inc., etc. et al.*
Case No. CVRI2306599

| | |
|---|---|
| Glenn E. Solomon<br>KING & SPALDING LLP<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071<br>(213) 443-4355<br>gsolomon@kslaw.com<br><br>Amy  L. O'Neill<br>Elizabeth K. Key<br>King & Spalding LLP<br>621 Capitol Mall, Suite 1500<br>Sacramento, CA 95814<br>(916) 321-4800<br>aoneill@kslaw.com<br>ekey@kslaw.com | *Attorneys for Plaintiff*<br>RIVERSIDE HEALTHCARE SYSTEM,<br>L.P., dba RIVERSIDE COMMUNITY<br>HOSPITAL |
| Errol King<br>Taylor J. Crousillac<br>PHELPS DUNBAR LLP<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802<br>(225) 376-0219 (TJC direct)<br>errol.king@phelps.com<br>taylor.crousillac@phelps.com | *Attorneys for Defendant*<br>MULTIPLAN INC. |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF DEMURRER AND DEMURRER TO
PLAINTIFF'S UNVERIFIED COMPLAINT

Electronically FILED by Superior Court of California, County of Riverside on 01/29/2024 08:34 PM
Case Number CVRI2306599 0000082321566 - Jason B. Galkin, Executive Officer/Clerk of the Court By Elizabeth Castaneda, Clerk

**FREEMAN MATHIS & GARY, LLP**
Jason W. Suh (State Bar No. 256573)
Jason.Suh@fmglaw.com
Samuel C. Jeon (State Bar No. 324043)
Samuel.Jeon@fmglaw.com
550 South Hope Street, 22nd Floor
Los Angeles, California 90071
Tel.: (213) 615-7000
Fax: (833) 264-2083

*Attorneys for Defendant*
REGIONAL CARE, INC.

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE – HISTORIC COURTHOUSE

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CVRI2306599<br>Assigned to:  Honorable Daniel Ottolia<br>Dept. 4<br><br>**DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT**<br><br>*[Filed and served concurrently with (1) Demurrer to Plaintiff's Complaint, and (2) [Proposed] Order]*<br><br>Date: April 4, 2024<br>Time:  8:30 a.m.<br>Dept.: 4<br><br>**RESERVATION ID/NO.** 753075687379<br><br>Complaint Filed:  December 8, 2023<br>Trial Date:          None |

DECLARATON OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S DEMURRER

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

## DECLARATION OF SAMUEL C. JEON

I, Samuel C. Jeon, declare as follows:

1.      I am an attorney duly admitted to practice in all of the courts of the State of California and I am an associate of Freeman Mathis & Gary LLP, attorneys of record for Defendant REGIONAL CARE, INC. (herein "**RCI**" or "**Defendant**").  The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2.      This declaration is made in support of RCI's Demurrer to the Complaint filed by Plaintiff RIVERSIDE HEALTHCARE SYSTEM, L.P., d/b/a RIVERSIDE COMMUNITY HOSPITAL ("**Plaintiff**").

3.      On January 24, 2024, I sent a detailed meet and confer letter to Plaintiff's counsel explaining the deficiencies in Plaintiff's Complaint.

4.      On January 26, 2024, I met and conferred with Plaintiff's counsel via conference call.

5.      During our call, I attempted to meet and confer, in good faith, with Plaintiff's counsel to resolve the issues raised in this demurrer, but Plaintiff's counsel was unwilling to dismiss or amend Plaintiff's Complaint, thereby necessitating this Demurrer.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on January 29, 2024, at Irvine, California.

_____
Samuel C. Jeon

DECLARATON OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S DEMURRER

Case No. CVRI2306599

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action. My business address is 550 South Hope Street, 22nd floor, Los Angeles, California 90071; jackie.struck@fmglaw.com.

      On the date indicated below, I served the following document(s) described as **DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S DEMURRER TO PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

☐    BY U.S. MAIL. I caused a true and correct copy of the foregoing document, enclosed in a sealed envelope and addressed as indicated on the Service List, to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    BY PERSONAL SERVICE. I caused a true and correct copy of the foregoing document to be delivered by hand via messenger service to the addresses indicated on the Service List.

☒    BY ELECTRONIC SERVICE.  I caused a true and correct copy of the foregoing document to be delivered, via electronic transmission or electronic notification through a designated electronic filing service provider, to the email addresses indicated on the Service List.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on January 29, 2024, at Los Angeles, California.

<em>Jackie Struck</em>_____

Jackie Struck

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

DECLARATON OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S DEMURRER

1

2

3

## SERVICE LIST

*Riverside Healthcare System, L.P. v. Apex Management Group I, Inc., etc. et al.*
Case No. CVRI2306599

| | |
|---|---|
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | Glenn E. Solomon<br>KING & SPALDING LLP<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071<br>(213) 443-4355<br>gsolomon@kslaw.com<br><br>Amy  L. O'Neill<br>Elizabeth K. Key<br>King & Spalding LLP<br>621 Capitol Mall, Suite 1500<br>Sacramento, CA 95814<br>(916) 321-4800<br>aoneill@kslaw.com<br>ekey@kslaw.com | *Attorneys for Plaintiff*<br>RIVERSIDE HEALTHCARE SYSTEM,<br>L.P., dba RIVERSIDE COMMUNITY<br>HOSPITAL |
| 13<br>14<br>15<br>16<br>17<br>18 | Errol King<br>Taylor J. Crousillac<br>PHELPS DUNBAR LLP<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802<br>(225) 376-0219 (TJC direct)<br>errol.king@phelps.com<br>taylor.crousillac@phelps.com | *Attorneys for Defendant*<br>MULTIPLAN INC. |

19

20

21

22

23

24

25

26

27

28

*FREEMAN MATHIS & GARY, LLP*
*550 South Hope Street, 22nd Floor*
*Los Angeles, California 90071*

4

DECLARATON OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S DEMURRER

Electronically FILED by Superior Court of California, County of Riverside on 01/29/2024 08:37 PM
Case Number CVRI2306599 0000082321630 - Jason B. Galkin, Executive Officer/Clerk of the Court By Elizabeth Castaneda, Clerk

**FREEMAN MATHIS & GARY, LLP**
Jason W. Suh (State Bar No. 256573)
Jason.Suh@fmglaw.com
Samuel C. Jeon (State Bar No. 324043)
Samuel.Jeon@fmglaw.com
550 South Hope Street, 22nd Floor
Los Angeles, California 90071
Tel.: (213) 615-7000
Fax: (833) 264-2083

*Attorneys for Defendant*
REGIONAL CARE, INC.

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE – HISTORIC COURTHOUSE**

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL, <br><br> Plaintiff, <br><br> v. <br><br> APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CVRI2306599 <br> Assigned to:  Honorable Daniel Ottolia <br> Dept. 4 <br><br> **DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S UNVERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Filed and served concurrently with (1) Declaration of Samuel C. Jeon, and (2)[Proposed] Order]* <br><br> Date: April 4, 2024 <br> Time:  8:30 a.m. <br> Dept.: 4 <br><br> **RESERVATION ID/NO.** 290112876659 <br><br> Complaint Filed:  December 8, 2023 <br> Trial Date:        None |

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 4, 2024, at 8:30 a.m., or as soon thereafter as this matter may be heard, in Department 4 of the above-entitled Court, located at 4050 Main Street, Riverside, CA 92501, Defendant REGIONAL CARE, INC. ("**RCI**") will and hereby does, move this

1

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AD MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S UNVERIFIED COMPLAINT

Court, pursuant to Code of Civil Procedure Sections 435 and 436, for an Order striking the following portions of the Unverified Complaint filed Plaintiff RIVERSIDE HEALTHCARE SYSTEM, L.P. d/b/a RIVERSIDE COMMUNITY HOSPITAL ("**Plaintiff**").:

1.  Complaint ¶ 94, which states: "including significant legal costs, such as attorneys' fees…"

2.  Complaint ¶ 104, which states: "including significant legal costs, such as attorneys' fees…"

3.  Complaint ¶ 95, which states: "Riverside further seeks punitive damages against RCI for its fraudulent behavior."

This motion to strike portions of Plaintiffs' Unverified Complaint is based upon this Notice of Motion and Motion to Strike, the accompanying Memorandum of Points and Authorities, the declaration of Samuel C. Jeon filed concurrently herein, all pleadings and papers on file herein, and any such evidence and arguments as the Court may allow at the hearing on this matter.

Respectfully submitted,

Dated: January 29, 2024                    **FREEMAN MATHIS & GARY, LLP**

By: _____
          Jason W. Suh
          Samuel C. Jeon
          *Attorneys for Defendant*
          REGIONAL CARE, INC.

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AD MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S UNVERIFIED COMPLAINT

**FREEMAN MATHIS & GARY, LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiff Riverside Healthcare System, L.P. d/b/a Riverside Community Hospital ("**Plaintiff**") improperly seeks to recover attorneys' fees and punitive damages from Defendant Regional Care Inc. ("**RCI**"), a third-party administrator, after Plaintiff provided medical care (allegedly in excess of $1.9 million dollars) to a motorcyclist critically injured by a high-speed rear-end collision.  (Complaint, ¶ 1.)  Based on the allegations asserted by the Plaintiff, there is no dispute that Plaintiff has no legal basis to recover either attorneys' fees or punitive damages from RCI.

This is because there is no statute or contract provision permitting Plaintiff with the right to recover attorney's fees against RCI. Additionally, Plaintiff has failed to allege sufficient facts to support its claim that Plaintiff is entitled to punitive damages.  RCI's alleged acts and/or omissions, as described in the Complaint, simply do not rise to the level of malicious/ despicable/ fraudulent conduct. Accordingly, RCI's motion to strike should be granted in its entirety without leave to amend. It should be noted that RCI has also concurrently filed its Demurrer to Plaintiff's Complaint, along with this Motion to Strike, requesting the Court to sustain RCI's Demurrer to Plaintiff fifth cause of action (for intentional interference with contract) and to Plaintiff sixth cause of action (for negligent interference with contract).

### II.      PLAINTIFF'S UNVERIFIED ALLEGATIONS

In August 2019, a patient was treated at Plaintiff's Emergency Department after being involved in a high-speed motorcycle accident.  (Complaint, ¶34). Plaintiff later learned that said patient had a health insurance plan that provided access to co-defendant Mutliplan, Inc.'s (herein "**Multiplan**") PPO network of healthcare providers.  (*Id.*)  Plaintiff further learned that said patient was insured by a MEC Premier Plan offered by Analytic Alternative, LLC d/b/a Apex Management Group ("**Analytic Alternative**") and/or Apex Management Group I, Inc. ("**Apex**") (herein collectively "**Apex Management Group**") through said patient's employer.  (Complaint, ¶¶ 11 and 36.)

Plaintiff claims that it provided medically necessary services to said patient. (Complaint, ¶35.) In turn, Plaintiff billed Multiplan and Apex Management Group $1,995,262.00, pursuant to Plaintiffs'

**FREEMAN MATHIS & GARY, LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

Participating Facility Agreement with Multiplan, and expected to be paid approximately $1,636,114.84. (Complaint, ¶37.)  Multiplan and Apex Management Group, however, refused to pay $1,636,114.84 because said patient allegedly had an annual coverage limit of $2,500.  (Complaint, ¶38.)

Negotiations between Plaintiff, on the one hand, and Multiplan/ Analytic Alternative, on the other hand, led to a $987,366.00 settlement offer from MultiPlan in October 2019, wherein Multiplan and Analytic Alternative entered into a "written one-time single case agreement" with Plaintiff.  (Complaint, ¶¶ 2 and 41.)  As a result, Plaintiff agreed to accept the $987,366.00 settlement offer. (Complaint, ¶¶ 2 and 42.) Nevertheless, only $2,500 was paid to Plaintiff. (Complaint, ¶45.)

Plaintiff now alleges, without any basis, that RCI (as the third-party administrator "for most, if not all, of Apex Management Group's 'skinny' health plans") somehow influenced Multiplan/ Analytic Alternative to refuse payment of $987,366.00. (Complaint, ¶¶ 89 and 91.) In addition to compensatory damages, Plaintiff seeks attorneys' fees and punitive damages against RCI. (Complaint, ¶¶ 94, 95, and 104.)

### III.   <u>LEGAL ARGUMENT</u>

"Any party, within the time allowed to respond to a pleading may serve and file a notice of motion to strike the whole or any part thereof..." (Cal. Code Civ. Proc., §435(b)(1).) The purpose of the motion is to prevent the defendant from having "to suffer discovery and navigate the often dense thicket of proceedings in summary adjudication" to address an improperly pleaded claim. (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682-83.) Following a motion to strike, Code of Civil Procedure section 436 authorizes the court to do the following: (1) Strike out any irrelevant, false, or improper matter inserted in any pleading; or (2) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of the state, a court rule, or an order of the court. (Code of Civ. Proc., §436.)

Motions to strike are used to attack defects or make objections to pleadings that may not be attacked by demurrer and may be used to attack a substantive defect that affects less than an entire cause of action. (*PH II, Inc. v. Superior Court, supra,* 33 Cal.App.4th at 1682.) A motion to strike may be

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

used to excise a prayer for relief, including an improperly pled claim for punitive or exemplary damages. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 385 (overruled in part on other grounds, *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196, fn. 8).)

### A. <u>Attorney's Fees Provision</u>

In California, "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." (Cal. Code of Civil Procedure § 1021.)

Here, Plaintiff seeks attorney's fees from RCI based on Complaint's fifth cause of action (for intentional interference with contract) and the sixth cause of action (for negligent interference with contract) It should be noted that Plaintiff has never alleged that it entered into a contract (either written or oral) with RCI. Indeed, there is no breach of contract claim against RCI asserted by the Plaintiff.

Additionally, Plaintiff has failed to cite to any relevant statute that provides for Plaintiff to recover attorney's fees against Plaintiff. This is because there is no applicable statute.  Accordingly, Plaintiff's requests for attorney's fees against RCI should be stricken in their entirety.

### B. <u>Punitive Damages</u>

The mere allegation of an intentional tort as committed is not sufficient to warrant an award of punitive damages. (*See Taylor v. Super. Ct.* (1979) 24 Cal.3d 890, 894 (citing Prosser, Law of Torts 4th Ed. 1971 § 2 at pp. 9-10.) "Not only must there be circumstances of oppression, fraud or malice, but facts must be alleged in the pleading to support such a claim." (*Grieves v. Super. Ct.* (1984) 157 Cal.App.3d 159, 166 (citing *G.D. Searle & Co. v. Super. Ct.* (1975) 49 Cal.App.3d 22, 29.) Even alleging the "magic language" of Civil Code section 3294 without factual support is insufficient. (*See Perkins v. Super. Ct.* (1981) 117 Cal.App.3d 1, 6-7 (pleading in the language of the statute is not objectionable when sufficient facts are alleged to support the allegation).)

RCI is entitled to have notice of the specifics of the punitive damages claim.  The requirement of specificity in the allegation of punitive damages is a rigid one, not subject to California rules of liberal construction of pleadings. (*See G.D. Searle,* 49 Cal.App.3d at 29 ("not withstanding relaxed

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

pleading criteria, certain tortious injuries demand firm allegation . . . they, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction . . . when a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.").)

California law "does not favor punitive damages and they should be granted with the greatest caution." (*See Dyna-Med, Inc. v. Fair Employment and Housing Comm(n)* (1987) 43 Cal.3d 1379.) Punitive damages are recoverable only where the defendant has acted with "oppression, fraud or malice." (Cal. Civ. Code § 3294.) Malice is defined as "conduct which is intended by the defendant to cause injury. Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (*Id.* at subd. (c)(1).) Fraud is defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of...causing injury." (*Id.* at subd. (c)(3).) Oppression means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (*Id.* at subd. (c)(2).)

Similarly, "conclusory characterization[s] of [a] defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud or malice,' express or implied, within the meaning of section 3294." (*See Brousseau v. Jarrett* (1977) 73 Cal.App.3d 864, 872.)

To state a claim for punitive damages, Plaintiff must set forth specific facts supporting malice. (*Id.* at 872; *see also Cervantes v. Great American Ins. Co.* (1983) 140 Cal.App.3d 763, 767 fn. 2 (allegations of malice and "wanton and reckless and conscious disregard" constitute mere "contentions, deductions, or conclusions of fact or law"); *Foy v. Greenblott* (1983) 141 Cal.App.3d 1, 13-14 (allegations of "willful and reckless and wanton disregard" were conclusions unsupported by facts and insufficient for punitive damages); *Dawes v. Super. Ct.* (1980) 111 Cal.App.3d 82, 91 (allegations of reckless conduct or conscious disregard were mere conclusions that had to be supported by facts).)

Here, Plaintiff seeks punitive damages against RCI under the fifth cause of action for intentional interference with contract.  Plaintiff generally concludes, without any legal basis,,

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

6

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

1  "[Plaintiff] further seeks punitive damages against RCI for its fraudulent behavior." (Complaint; ¶95.)

2  This is a critical flaw because Plaintiff has failed to set forth any material fact demonstrating that RCI

3  engaged in fraud. In other words, there are no specific facts in the Complaint which would support a

4  finding of malice, oppression or fraud.

5  Even if the Complaint contains the "magic language" of California Civil Code section 3294,

6  it fails to articulate any facts which actually support these conclusory allegations. In short, even if all

7  factual allegations as to their claims were proven true, Plaintiff would not be entitled to recover

8  punitive damages as a matter of law because no facts have been alleged to support RCI's "fraudulent

9  behavior."

10  Lastly, Plaintiff lacks a valid claim for intentional interference with contract as fully discussed

11  in RCI's Demurrer. Consequently, the claim of punitive damages is unfounded and cannot stand

12  without a valid cause of action against RCI.

13  Thus, the claim for punitive damages should be stricken from the Complaint.

14  **IV.  DEFENDANT HAS MET AND CONFERRED**

15  On January 24, 2024, Samuel C. Jeon, counsel for RCI, sent a detailed meet and confer letter

16  to Plaintiff's counsel explaining the deficiencies in Plaintiff's Complaint. (Jeon Decl.; ¶3.) On January

17  26, 2024, RCI and Plaintiff's counsel met and conferred via conference call. (Jeon Decl.; ¶4.) During

18  the call, Defendant's counsel attempted to meet and confer, in good faith, with Plaintiff's counsel to

19  resolve the issues raised in this Motion to Strike, but Plaintiff was unwilling to amend its Complaint,

20  thereby necessitating this Motion to Strike. (Jeon Decl.; ¶5.)

21  **V.  CONCLUSION**

22  For the foregoing reasons, Defendant RCI respectfully request this Court to grant its motion

23  to strike portions of Plaintiffs' Complaint. The specific allegations to be stricken from the Complaint,

24  by paragraph and/or page and line, are as follows:

25  1.  Complaint ¶ 94, which states: "including significant legal costs, such as attorneys' fees…"

26  2.  Complaint ¶ 104, which states: "including significant legal costs, such as attorneys'

27  fees…"

28  ///

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AD MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S UNVERIFIED COMPLAINT

3.   Complaint ¶ 95, which states: "Riverside further seeks punitive damages against RCI for its fraudulent behavior."

Respectfully submitted,

Dated: January 29, 2024                    **FREEMAN MATHIS & GARY, LLP**

By: _____
Jason W. Suh
Samuel C. Jeon
*Attorneys for Defendant*
REGIONAL CARE, INC.

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AD MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S UNVERIFIED COMPLAINT

Case No. CVRI2306599

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

  I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action. My business address is 550 South Hope Street, 22nd floor, Los Angeles, California 90071; jackie.struck@fmglaw.com.

  On the date indicated below, I served the following document(s) described as **DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

☐ BY U.S. MAIL. I caused a true and correct copy of the foregoing document, enclosed in a sealed envelope and addressed as indicated on the Service List, to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ BY PERSONAL SERVICE. I caused a true and correct copy of the foregoing document to be delivered by hand via messenger service to the addresses indicated on the Service List.

☒ BY ELECTRONIC SERVICE.  I caused a true and correct copy of the foregoing document to be delivered, via electronic transmission or electronic notification through a designated electronic filing service provider, to the email addresses indicated on the Service List.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  Executed on January 29, 2024, at Los Angeles, California.

*Jackie Struck*

Jackie Struck

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AD MOTION TO STRIKE PORTIONS OF PLAINTIFF'S UNVERIFIED COMPLAINT

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

**SERVICE LIST**

*Riverside Healthcare System, L.P. v. Apex Management Group I, Inc., etc. et al.*
Case No. CVRI2306599

| | |
|---|---|
| Glenn E. Solomon<br>KING & SPALDING LLP<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071<br>(213) 443-4355<br>gsolomon@kslaw.com<br><br>Amy  L. O'Neill<br>Elizabeth K. Key<br>King & Spalding LLP<br>621 Capitol Mall, Suite 1500<br>Sacramento, CA 95814<br>(916) 321-4800<br>aoneill@kslaw.com<br>ekey@kslaw.com | *Attorneys for Plaintiff*<br>RIVERSIDE HEALTHCARE SYSTEM,<br>L.P., dba RIVERSIDE COMMUNITY<br>HOSPITAL |
| Errol King<br>Taylor J. Crousillac<br>PHELPS DUNBAR LLP<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802<br>(225) 376-0219 (TJC direct)<br>errol.king@phelps.com<br>taylor.crousillac@phelps.com | *Attorneys for Defendant*<br>MULTIPLAN INC. |

DEFENDANT REGIONAL CARE, INC.'S NOTICE OF MOTION AD MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S UNVERIFIED COMPLAINT

Electronically FILED by Superior Court of California, County of Riverside on 01/29/2024 08:37PM
Case Number CVRI2306599 0000082321631 - Jason B. Galkin, Executive Officer/Clerk of the Court By Elizabeth Castaneda, Clerk

1

**FREEMAN MATHIS & GARY, LLP**
Jason W. Suh (State Bar No. 256573)
Jason.Suh@fmglaw.com
Samuel C. Jeon (State Bar No. 324043)
Samuel.Jeon@fmglaw.com
550 South Hope Street, 22nd Floor
Los Angeles, California 90071
Tel.: (213) 615-7000
Fax: (833) 264-2083

*Attorneys for Defendant*
REGIONAL CARE, INC.

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE – HISTORIC COURTHOUSE

| | |
|---|---|
| RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL, <br><br> Plaintiff, <br><br> v. <br><br> APEX MANAGEMENT GROUP I, INC. dba APEX MANAGEMENT GROUP, an Illinois corporation; ANALYTIC ALTERNATIVE, LLC dba APEX MANAGEMENT GROUP, an Illinois corporation; MULTIPLAN INC., a Delaware corporation; REGIONAL CARE, INC., a Nebraska corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CVRI2306599 <br> Assigned to: Honorable Daniel Ottolia <br> Dept. 4 <br><br> **DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT** <br><br> *[Filed and served concurrently with (1) Motion to Strike Portions of Plaintiff's Complaint, and (2) [Proposed] Order]* <br><br> Date: April 4, 2024 <br> Time: 8:30 a.m. <br> Dept.: 4 <br><br> **RESERVATION ID/NO.** 290112876659 <br><br> Complaint Filed: December 8, 2023 <br> Trial Date: None |

*(sidebar)* **FREEMAN MATHIS & GARY, LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

1

**FREEMAN MATHIS & GARY, LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

## DECLARATION OF SAMUEL C. JEON

I, Samuel C. Jeon, declare as follows:

1.      I am an attorney duly admitted to practice in all of the courts of the State of California and I am an associate of Freeman Mathis & Gary LLP, attorneys of record for Defendant REGIONAL CARE, INC. (herein "**RCI**" or "**Defendant**").  The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2.      This declaration is made in support of RCI's Motion to Strike Portions of the Complaint filed by Plaintiff RIVERSIDE HEALTHCARE SYSTEM, L.P., dba RIVERSIDE COMMUNITY HOSPITAL ("**Plaintiff**").

3.      On January 24, 2024, I sent a detailed meet and confer letter to Plaintiff's counsel explaining the deficiencies in Plaintiff's Complaint.

4.      On January 26, 2024, Plaintiff's counsel and I met and conferred via conference call.

5.      During the call, I attempted to meet and confer, in good faith, with Plaintiff's counsel to resolve the issues raised in this Motion to Strike, but Plaintiff was unwilling to amend its Complaint, thereby necessitating this Motion to Strike.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on January 29, at Irvine, California.

_____
*Samuel C. Jeon*

DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC'S
MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

Case No. CVRI2306599

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action. My business address is 550 South Hope Street, 22nd floor, Los Angeles, California 90071; jackie.struck@fmglaw.com.

      On the date indicated below, I served the following document(s) described as **DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC.'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

☐    BY U.S. MAIL. I caused a true and correct copy of the foregoing document, enclosed in a sealed envelope and addressed as indicated on the Service List, to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    BY PERSONAL SERVICE. I caused a true and correct copy of the foregoing document to be delivered by hand via messenger service to the addresses indicated on the Service List.

☒    BY ELECTRONIC SERVICE.  I caused a true and correct copy of the foregoing document to be delivered, via electronic transmission or electronic notification through a designated electronic filing service provider, to the email addresses indicated on the Service List.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on January 29, 2024, at Los Angeles, California.



Jackie Struck

---

3

DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC'S
MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

**SERVICE LIST**

*Riverside Healthcare System, L.P. v. Apex Management Group I, Inc., etc. et al.*
Case No. CVRI2306599

| | |
|---|---|
| Glenn E. Solomon<br>KING & SPALDING LLP<br>633 West Fifth Street, Suite 1600<br>Los Angeles, CA 90071<br>(213) 443-4355<br>gsolomon@kslaw.com<br><br>Amy  L. O'Neill<br>Elizabeth K. Key<br>King & Spalding LLP<br>621 Capitol Mall, Suite 1500<br>Sacramento, CA 95814<br>(916) 321-4800<br>aoneill@kslaw.com<br>ekey@kslaw.com | *Attorneys for Plaintiff*<br>RIVERSIDE HEALTHCARE SYSTEM,<br>L.P., dba RIVERSIDE COMMUNITY<br>HOSPITAL |
| Errol King<br>Taylor J. Crousillac<br>PHELPS DUNBAR LLP<br>II City Plaza<br>400 Convention Street, Suite 1100<br>Baton Rouge, LA 70802<br>(225) 376-0219 (TJC direct)<br>errol.king@phelps.com<br>taylor.crousillac@phelps.com | *Attorneys for Defendant*<br>MULTIPLAN INC. |

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

DECLARATION OF SAMUEL C. JEON IN SUPPORT OF DEFENDANT REGIONAL CARE, INC'S
MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT